**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Elizabeth GUERRO, Defendant–Appellee.**

**No. 92–2071.**

United States Court of Appeals,
Tenth Circuit.

Jan. 15, 1993.

---

Kathleen A. Felton, Attorney, Dept. of Justice, Washington, D.C. (Nina Goodman, Attorney, Dept. of Justice, Washington, D.C., Don J. Svet, U.S. Atty., Albuquerque, NM, and Joe M. Romero, Jr., Asst. U.S. Atty., Albuquerque, NM, on the brief), for plaintiff-appellant.

Peter Schoenburg, Assistant Federal Public Defender, Albuquerque, NM, for defendant-appellee.

Before LOGAN and KELLY, Circuit Judges and BROWN, District Judge.[†]

PAUL KELLY, Jr., Circuit Judge.

Defendant-appellee Elizabeth Guerro was indicted for voluntary manslaughter on October 3, 1991. After an evidentiary hearing on her motion to suppress, the district court found that statements she had made shortly after the incident were involuntary and that her signed waiver of *Miranda* rights was invalid. On appeal, the government, while conceding the invalidity of her signed *Miranda* waiver, challenges the finding as to voluntariness. Our jurisdiction arises under 18 U.S.C. § 3731 and we reverse.

## BACKGROUND

On August 5, 1991, police received a report that Charlotte Guerro had been stabbed at her home on the Alamo Indian Reservation and that the victim's sister (Defendant) was suspected. As Navajo Police Officer Jasper Hanson proceeded to the scene, he learned that the victim had died.

At the home, numerous relatives, including Defendant's mother and brothers, and friends were present. One brother, who was very upset, told the officer that Ms. Guerro did not have to talk to officers until she had an attorney. Another brother asked if the statement Hanson wanted to take from Defendant would "incriminate" his sister.

Officer Hanson took Defendant into her parent's bedroom and her brothers and a friend followed. Defendant was crying

† The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

and very upset. Officer Hanson advised Defendant of her *Miranda* rights and either asked or told her to sign a waiver form, which she did. Defendant then made a statement in which she admitted stabbing her sister.

At the suppression hearing, Defendant testified that she was twenty-four years old and a high school graduate. She had never lived away from home and had no prior experience with police. She testified that she was afraid of Officer Hanson and had not understood the *Miranda* rights or the waiver form.

The district court granted Defendant's motion to suppress the statement she had given Officer Hanson and issued findings from the bench. The court noted that, while her intelligence was average, her reading skills were at the fifth or sixth grade level and her ability to understand English was minimal. The court also described Defendant as "more susceptible to suggestion, intimidation—even though it may not have been overt—than any witness I have ever seen in my experience on the bench." II R. 180. As another factor, the court pointed out the circumstances existing at the time: Defendant had just learned her sister had died from the stab wound, Defendant's mother had fainted and was apparently clutching her heart and a large group of distraught family and friends had gathered.

As to Officer Hanson's conduct, the district court found that there was not "much evidence of direct intimidation by Officer Hanson." II R. 179. Rather, "the circumstances under which the interview was conducted were extremely intimidating." II R. 179. In a written order, the court clarified:

> [C]areful consideration of the existing case law leads me to believe that in order to find police coercion, I do not need to find that Officer Hanson did anything objectively "wrong." My understanding of [the caselaw] is that otherwise seemingly innocuous "acts" of a law enforcement officer may be deemed "coercive" in a case with exceptional surrounding circumstances and an unusually susceptible defendant.

I R. doc. 31 at 2–3.

## DISCUSSION

This appeal does not concern the district court's finding that Defendant's *Miranda* waiver was invalid. The government concedes that point. The government argues, however, that the statement made by Defendant was voluntary and may therefore be used for impeachment purposes under the rule announced in *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

A coerced or involuntary statement, which violates a suspect's rights under the Fifth Amendment, is not admissible at trial for any purpose. *United States v. Short,* 947 F.2d 1445, 1449 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992). The issue of voluntariness is reviewed de novo, but the factual findings of the district court are reviewed under the clearly erroneous standard. *Short,* 947 F.2d at 1449.

The district court specifically found Officer Hanson did not utilize improper interrogation tactics or coerce Ms. Guerro. Rather, it was the combination of the circumstances existing at the time of the statement and the characteristics of Ms. Guerro that led the court to the conclusion that the statement was involuntary. The government argues that *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986) requires "coercive police activity" in order to find "that a confession is not 'voluntary' within the meaning of the Due Process Clause."

In *Connelly,* a man approached a police officer and, "without any prompting, stated that he had murdered someone and wanted to talk about it." *Id.* at 160, 107 S.Ct. at 518. The man was advised of his *Miranda* rights and made a full confession. The next day, he stated that he had been instructed by voices to either confess or kill himself. The trial court suppressed his statements, finding that, although the police had done nothing wrong, the confes-

sion was involuntary. *Id.* at 162, 107 S.Ct. at 519.

In reversing, the Court reasoned that "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Connelly*, 479 U.S. at 164, 107 S.Ct. at 520. While the defendant's mental condition is an important consideration, to find a statement involuntary, the police must somehow overreach by exploiting a weakness or condition known to exist. *Id.* at 165, 107 S.Ct. at 520. *See United States v. Chrismon*, 965 F.2d 1465, 1469 (7th Cir. 1992) ("A diminished mental state is only relevant to the voluntariness inquiry if it made mental or physical coercion by the police more effective.").

 We decline, as did the Court in *Connelly*, to require courts to evaluate the motivation of a suspect. *Connelly*, 479 U.S. at 165–67, 107 S.Ct. at 520–22. The Fifth Amendment guarantees that the government will not deprive a defendant of life, liberty, or property without due process of law. U.S. Const. amend. V. This guarantee does not protect against conduct by private parties, *Connelly*, 479 U.S. at 166, 107 S.Ct. at 521, nor does it protect a defendant from his own compulsions or internally-applied pressures which are not the product of police action. *See United States v. Kelley*, 953 F.2d 562, 565 (9th Cir.1992) (suspect who was experiencing withdrawal made a voluntary statement).

We recently addressed the issue of voluntariness in *Short*, and held that only those statements "obtained by government acts, threats, or promises" are inadmissible. *Short*, 947 F.2d at 1149–50. The Defendant testified that he was under the influence of pain pills and visibly in pain when he made certain incriminating statements. This court affirmed the district court's refusal to suppress the statements, being convinced "that Defendant's statements were not impermissibly coerced by the police as a matter of law." *Id.* at 1450.

As the district court pointed out, *Short* lists several factors a court is to review, including characteristics of the person as well as the circumstances of the interview. *Id.* at 1449. However, these factors must be considered in relation to the tactics employed by the police to determine if police took unfair advantage of a defendant's traits or the surrounding circumstances. *Connelly*, 479 U.S. at 165–67, 107 S.Ct. at 520–22. Here, the district court did not show any police overreaching and merely concluded that Officer Hanson had taken firm, directive actions. The district court, however, failed to make the "essential link between coercive activity of the State, on the one hand, and a resulting confession by defendant, on the other." *Connelly*, 479 U.S. at 165, 107 S.Ct. at 521.

REVERSED and REMANDED.