**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 4 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

---

CHARLES ELLIOTT,

Petitioner-Appellant,

v.

JOE WILLIAMS, Warden,

Respondent-Appellee.

No. 99-2254

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV-96-1362-JC)**

---

Benjamin Gonzales, Assistant Federal Public Defender (Stephen P. McCue, Federal Public Defender with him on the brief), Albuquerque, New Mexico, for Petitioner-Appellant.

Margaret McLean, Assistant Attorney General (Patricia A. Madrid, Attorney General with her on the brief), Santa Fe, New Mexico, for Respondent-Appellee.

---

Before **SEYMOUR** and **MURPHY**, Circuit Judges, and **KANE**, Senior District Judge.[*]

---

**KANE**, District Judge.

---

[*] Honorable John L. Kane, Jr., Senior United States District Judge for the District of Colorado, sitting by designation.

This habeas appeal and request for certificate of appealability arises out of Petitioner Charles Elliott's New Mexico state court convictions for criminal sexual penetration and kidnaping of his then ex-wife, Toni Elliott. After Elliott's state court convictions were affirmed on direct appeal and the denial of his state application for post-conviction relief affirmed, Elliott filed a petition for writ of habeas corpus in federal district court. The United States District Court for the District of New Mexico referred the matter to a magistrate judge, who issued proposed findings and a recommendation that Elliott's petition be denied. Over Elliott's objection, the district court adopted the magistrate's proposed findings and recommendations as an order of the court and denied Elliott's request for a certificate of appealability. We exercise jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

Elliott challenges the constitutionality of his state court convictions on three grounds. First, he contends he was denied effective assistance of counsel at trial when his attorney failed not only to present an opening or closing statement to the jury, but declined entirely to present any defense after the prosecution rested.[1] Because the victim of Elliott's alleged crimes, his ex-wife, recanted her testimony against Elliott at trial, Elliott argues the presentation of a defense would have altered the outcome of the

---

[1] At the conclusion of the prosecution's case, Elliott's trial counsel moved for a directed verdict on all three of the state's charges. When the motion was denied as to the rape and kidnaping charges, Elliott's counsel declined to present any defense. Counsel called no witnesses, presented no evidence, and waived closing argument. The case therefore went to the jury at the conclusion of the prosecution's case without Elliott's counsel ever articulating a theory in defense of the state's charges.

proceedings. Second, Elliott argues he was denied his Fourteenth Amendment right to a fair trial when the trial court improperly admitted into evidence his confession, which he gave while under the influence of heroin. Third, Elliott contends he was denied his Fourteenth Amendment right to due process when the trial court improperly admitted prior bad act evidence. Alternatively, Elliott argues he was entitled to an evidentiary hearing before the district court to develop a factual basis for his ineffective assistance of counsel claims. Elliott denies he had any opportunity to develop a factual basis during his direct appeal, because there is no procedural mechanism under New Mexico law to augment the record on direct appeal.

## I. STANDARD OF REVIEW.

Because Elliott filed his habeas Petition in the district court on October 6, 1996, we review it under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996)(effective April 24, 1996). *See Hooks v. Ward*, 184 F.3d 1206, 1213 (10th Cir.1999). The appropriate standard of review under AEDPA depends on whether a claim was decided on the merits in state court. "If the claim was not heard on the merits by the state courts, and the federal district court made its own determination in the first instance, we review the district court's conclusions of law *de novo* and its findings of fact, if any, for clear error." *LaFevers v. Gibson*, 182 F.3d 705, 711 (10th Cir.1999) (interpreting § 2254(d)).

If, as here, a petitioner's claims were adjudicated on their merits by the state courts, he will be entitled to federal habeas relief only if he can establish that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). Elliott's claims do not challenge the state court's factual determinations under § 2254(d)(2), so in accordance with the Supreme Court's elucidation of § 2254(d)(1) in *Williams v. Taylor*, __ U.S. __, __-__, 120 S.Ct. 1495, 1521-23 (2000), we may grant the writ if we find the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law; decided the case differently than the Supreme Court has on a set of materially indistinguishable facts; or unreasonably applied the governing legal principle to the facts of the prisoner's case. *Van Woudenberg v. Gibson*, 211 F.3d 560, 566 (10th Cir. 2000)(citing *Williams*). When reviewing a state court's application of federal law we are precluded from issuing the writ simply because we conclude in our independent judgment that the state court applied the law erroneously or incorrectly. "Rather, we must be convinced that the application was also objectively unreasonable." *Id.*, n. 4 (quoting *Williams*, __ U.S. __, __, 120 S.Ct. at 1523). *Accord Thomas v. Gibson*, 218 F.3d 1213, 1220 (10th Cir. 2000)(quoting *Williams* and explaining that by "objectively reasonable," we mean that the writ may be granted "only if 'the state court identifies the

4

correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case'").

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL.

An accused is entitled to effective representation of counsel.  U.S. Const. amend. VI; N.M. Const. art. II, § 14.   To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate that "(i) counsel's performance was objectively deficient and (ii) counsel's deficiency prejudiced the defense, depriving petitioner of a fair trial with a reliable result." *Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir. 2000)(applying *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).   It is our task under AEDPA to discern whether the New Mexico courts applied the *Strickland* standard unreasonably in Elliott's case.

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88.  "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  Courts are instructed to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that counsel's conduct was not the result of error or omission but derived instead from trial strategy. *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.*  Because the

5

purpose of the Sixth Amendment's right to counsel clause is to ensure that a criminal defendant receive a fair trial, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the ...[proceedings] cannot be relied on as having produced a just result." *Id.* at 686.

Here, the New Mexico Court of Appeals determined counsel's decisions not to present opening or closing arguments were "questions of trial tactics and strategy" not to be "second-guessed" on appeal, and speculated that trial counsel "may have believed the State's case so weak or incredible that no further argument was needed." Mem. Op., No. 17,026, slip op. at 8 (N.M. App. May 3, 1996) (R. Vol. I, Tab 13, Att. W.) Both conclusions were simply endorsements of the reasonableness presumption asserted as fact, without acknowledgment of Elliott's facts in rebuttal or citation to the record indicating the Court had reviewed counsel's conduct to discern what his "trial strategy" or "beliefs" were, and without any citation to case law involving similar conduct or issues. The only case cited by the Court of Appeals involved neither the waiver of opening or closing statements nor the failure to present a case-in-chief in defense. Rather, the issue in *State v. Dean*, 727 P.2d 944, 947 (N.M. App.), *cert. denied*, 726 P.2d 856 (1986) (cited in slip op. at 8), was defense counsel's decision to cross-examine a police officer, which resulted in the prosecution offering rebuttal evidence that undermined the accused's alibi defense. Finding counsel's attempt to undermine the identification the only reasonable

6

tactic available, the New Mexico Court of Appeals rejected defendant's contention that counsel was ineffective. *Id.* Neither the Court of Appeals in its decision nor the State in its briefs cited any case involving a trial counsel's decision to rest at the conclusion of the prosecution's case in chief, after waiving both opening *and* closing arguments and failing to present any defense on the accused's behalf, let alone a case in which such conduct was sanctioned as the product of reasonable "trial tactics" or "strategy."[2] The circumstances were clearly ones of first impression in New Mexico, yet the Court of Appeals undertook no analysis or review of them whatsoever.

The Court of Appeals' conclusions were then adopted, verbatim and without any citation to legal authority or case of any kind, by the federal magistrate judge whose recommendation that habeas relief be denied was adopted as the order of the New Mexico District Court. *See* Magistrate Judge's Am. Proposed Findings & Recommended Disposition, No. 96cv1362 JC/JHG, at p. 7 (Apr. 2, 1999)(R. Vol I, Tab 42).[3] Because

---

[2]     We note that Elliott's appellate counsel did locate one case in which counsel's failure to make either an opening or closing argument was deemed unreasonable and rendered counsel's assistance constitutionally ineffective. *Commonwealth v. Sparks*, 539 A.2d 887 (Pa. App.1988) (where evidence at trial had been conflicting and counsel had made no opening statement to outline defendant's case for the jury, failure to make closing argument rendered representation constitutionally ineffective).

[3]     The one case cited by the magistrate judge in support of his conclusions that the Court of Appeals' decisions on both Elliott's ineffective assistance and due process claims were "not so clearly incorrect" as to warrant the granting of habeas relief was *White v. Scott*, 1998 WL 165162, *2 (10th Cir. 1998). *See* Am. Proposed Findings/Recommended Disposition at p. 8, 9. Not only is the decision unpublished and therefore inappropriate for use as precedent in this circuit, but we note the case involved neither type of claim nor facts apposite to this case such that it is of no authoritative or persuasive value.

7

the Court of Appeals ended its inquiry at the first prong of the *Strickland* standard, there was no consideration by either court as to whether any deficiency of counsel prejudiced Elliott's defense.

While it is unclear from either the Court of Appeals opinion or the magistrate judge's Recommendation that either court actually undertook to review the record of counsel's conduct at trial, we did so on appeal. This required listening to hours of recorded cassette tapes – the only "record" of trial proceedings available under New Mexico's summary calendaring procedures for processing appeals such as Elliott's – as no written transcript of them was ever prepared and the parties' citations to the cassette tapes were inconsistent both with each other and with this court's audio equipment.[4] Mindful of the standards articulated above and the deference to be accorded trial counsel's conduct under *Strickland* and its progeny, we conclude the deficiency of counsel's conduct in this case cannot, under an objective standard, reasonably be disputed. By definition, the proper functioning of the adversarial process contemplates the presentation of adverse views of the evidence so that a factfinder in a given case can

---

[4] We pause briefly to point out that the lack of official transcript is not somehow the fault of Elliott or his counsel. In an effort to address increasing appellate caseloads and delay, the New Mexico state courts have adopted several innovations to avoid backlogs and assist in case management. Two such innovations have been the use of summary calendaring by the court of appeals in the initial processing of appeals, N.M.R. App. Proc. 12-210(D), and the introduction of audio trial transcripts to reduce costs and time delays associated with the production of transcribed, written records of trial. N.M.R. App. Proc. 12-211. *See* Sullivan, J. Thomas, New Mexico's Summary Calendar for Disposition of Criminal Appeals: An Invitation for Inefficiency, Ineffectiveness and Injustice, 24 N. Mex. L. Rev. 27 (Winter 1994).

make an informed determination as to what the facts were so they could be applied to the law. Here, there was simply no presentation made on Elliott's behalf. Where, as here, the prosecution was in possession of the accused's taped confession and played that confession for the jury, speculation that trial counsel "may have believed" the State's case "so weak or incredible" that no defense or opening or closing statement was necessary is subsumed by an unarticulated premise and unreasonable under any standard, including that mandated by 28 U.S.C. § 2254(d)(1) after AEDPA.

Counsel's failure to make any closing argument was also clearly unreasonable under the circumstances of this case, where there was conflicting evidence from the alleged victim and where the defendant's confession was made under the influence of heroin. We note that while Elliott's trial counsel presented no case in defense, he did cross-examine the state's witnesses, including Detective Barela and the victim of the alleged crimes, Elliott's wife, Toni. In response to counsel's questions on cross-examination, Mrs. Elliott testified that, while she hadn't "planned on having sex that morning [with Mr. Elliott] . . . . I was saving myself for him . . . [and] it didn't bother me in the least." (R. Tape # CR-9-TS, 3/1893.) Mrs. Elliott also testified that she had told this to Detective Barela, *id.*, and when he asked Mrs. Elliott whether she believed she was a victim of kidnaping, rape or assault on September 4, 1992, stated "No, I never said those words . . . I never said those words at all." *Id.* That the state used prior inconsistent statements from Mrs. Elliott's initial interview with police and her testimony at the

9

preliminary hearing to impeach her is immaterial; the evidence on consent was conflicting and could have been used in closing to cast doubt on Elliott's guilt.

It is undisputed that Elliott was under the influence of heroin at the time he gave his confession and that Detective Barela became aware of that fact at least by the end of the taped statement when he asked Elliott about it. Counsel's failure to argue in closing the weight Elliott's confession ought to be accorded given that fact and Barela's testimony on cross-examination that he had received narcotics training at some point before his interview with Elliott (Tape # CR-14-TS, 3/19/93) was unreasonable and strategically lacking in merit.

Notwithstanding our determination, in the strongest terms, that the performance of Elliott's trial counsel was deficient,[5] our focus under *Strickland* must shift to the effect counsel's performance had on Elliott's defense. Specifically, the question to be determined is whether, "but for counsel's errors, there is a reasonable probability that the result of the proceedings would have been different." *Fox*, 200 F.3d at 1295 (citing *Strickland*). In our view, the question of whether counsel's failures prejudiced Elliott turns on the constitutionality of the admission of Elliott's taped confession. Without the confession, a defense presented and argued to a jury that Mrs. Elliott was not held or forced to have sexual intercourse with Elliott against her will would have been supported by Mrs. Elliott's testimony and may well have altered the outcome of the trial. With the

---

[5] This conclusion obviates the need for an evidentiary hearing to develop a factual basis for Elliott's ineffective assistance claim and we deny Elliott's request in that regard.

confession, however, we are unwilling to conclude the outcome would have been different even if defense counsel had attempted to mitigate its effect in closing. We address the constitutionality of the confession's admission, raised by Elliott as a separate grounds for habeas relief, below.

### III. ADMISSION OF ELLIOTT'S TAPED CONFESSION.

Elliott asserts the admission of his intoxicated statement to Detective Barela violated his constitutional right to a fair trial because it was involuntary under *Colorado v. Connelly*, 479 U.S. 157 (1986). Elliott acknowledges *Connelly* stands for the proposition that "coercive police activity" is a necessary predicate to any finding of involuntariness, but contends Barela's taping of his statement under circumstances where he knew or should have known he was under the influence of heroin constitutes such activity under *United States v. Guerro,* 983 F.2d 1001, 1004 (10th Cir. 1993)("coercion" for purposes of *Connelly* may exist where police "overreach by exploiting a weakness or condition known to exist").

The admissibility of Elliott's taped confession was considered before trial at a separate evidentiary hearing on Elliott's Motion to Suppress. (RP. 31.)[6] The trial court's form Order Denying Motion to Suppress included no findings of fact or conclusions of law. (RP. 47) A review of the cassette tapes of the hearing reveals the question of voluntariness was decided solely as a question of fact, even though *Connelly* and its

_____

[6] A separate record volume was submitted in addition to the pleadings included in Record Volume I and designated "Record Proper." The Record Proper is cited herein as "RP."

11

predecessor, *Townsend v. Sain*, 372 U.S. 293, 307 (1962), were raised at the outset of the hearing and argued by both sides. The judge, after hearing testimony from Detective Barela on behalf of the State and expert witness Dr. Walters on behalf of Elliott, rejected the implication from Dr. Walters' testimony that the fact Elliott was under the influence of heroin alone rendered his confession unreliable and involuntary. While "confident" that Mr. Elliott was to some extent under the influence of narcotic drugs at the time he gave his statement, the court found his sniffling and demeanor to have been "more in response to his emotional state [than his] degree or effect of intoxication, so I am not going to rule [under] the circumstances that this is an involuntary statement." Audiotape of 12/23/92 Motions Hearing (R. Tape No. CR-2-TS, 12/23/92) (emphasizing that Elliott had had a "big day," having "committed these crimes," contemplated suicide and the loss of his children all in the same day).

In accordance with the New Mexico Court of Appeals summary calendaring/disposition procedures, the court of appeals' calendar notice proposed to hold that "the trial court's finding of voluntariness was supported by substantial evidence, based on a review of the whole record."[7] Mem. Op. at 2. In his Memorandum in

---

[7]    Under the New Mexico appellate system, if a case is placed on the summary calendar a transcript of the proceedings is not filed and the appellate court clerk issues a calendar notice stating the basis for a proposed disposition. N.M.R. App. Proc. Rule 12-210(D). Appellate or trial counsel then has 20 days from the date of service of the notice to serve and file a memorandum setting forth reasons why the proposed disposition should or should not be made. *Id.*, 12-210(D)(3). This is done without benefit of a transcript, written or audio. After reviewing the memorandum or memoranda, the court may issue another notice of proposed summary disposition or proceed to decide the case by opinion or order. *Id.*, 12-210(D)(5). For a critique

12

Opposition to Summary Affirmance (R. Vol. I, Tab 13, Att. T), Elliott challenged the denial of his Motion to Suppress, arguing his statement was involuntary under applicable New Mexico state law such that its admission by the trial court violated his rights against self-incrimination under the federal and New Mexico state constitutions. Citing *State v. Fekete*, 901 P.2d 708, 716-17 (N.M. 1995) and related state court authorities, the Court of Appeals applied New Mexico's "totality of the circumstances" test to conclude there was "no evidence in the record to support a finding of police misconduct, that in making the statement Defendant was not deprived of due process of law, and that the trial court properly denied his motion to suppress." Mem. Op. (R. Vol. I, Tab 13, Att. W), slip op. at 2-4. Elliott's habeas petition ensued.

Because the state court addressed the merits of Elliott's argument on appeal, the district court's review was limited to a consideration of whether the determination that Elliott's statement was voluntary was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2) (quoted in Recommendation at p. 5). We set forth the district court's application of these standards in its entirety:

> Both parties agree that *Colorado v. Connelly*, 473 U.S. 157 (1986) governs this issue. The New Mexico Court of Appeals evaluated Elliott's

---

of the summary calendaring system, *see* Sullivan, *supra* n. 4, at 36-42.

claims under *Connelly*.[8] The facts of Elliott's case were different from the facts of *Connelly*. Thus, the result reached by the New Mexico Court of Appeals is not contrary to clearly established federal law within the meaning of § 2254(d). The only question, therefore, is whether the New Mexico Court of Appeals unreasonably applied *Connelly* to the facts of this case.

Under *Connelly*, coercive police activity is a necessary predicate to a finding that a confession is not voluntary within the meaning of the due process clause. *Colorado v. Connelly*, 479 U.S. at 167. The New Mexico Court of Appeals found there was no evidence in the record to support a finding of police misconduct and concluded Elliott was not denied due process. Although Elliott had taken heroin, his ability to give a voluntary statement was not impaired. The state court's determination that the statement was voluntary and admissible was not so clearly incorrect that reasonable jurists considering the question would be of one view that the ruling was incorrect. *White v. Scott*, 1998 WL 165162 *2 [unpublished disposition]; 28 U.S.C. § 2254(d). Therefore, Elliott is not entitled to relief under 22 U.S.C. § 2254 with respect to this claim.

Am. Proposed Findings and Recommended Disposition, pp. 8-9.

We are puzzled at the rationale that led to the conclusion that the "only question" before the district court was whether the Court of Appeals unreasonably applied *Connelly* to the facts of Elliott's case: Not only did the Court of Appeals not undertake to apply *Connelly*, save indirectly by its application of *Fekete*, but it is an oversimplification at best to assert that the distinguishability of the facts in this case from those in *Connelly* satisfies the review standard set forth in § 2254(d)(1). The district court offers no citation to support its assertion, and, in fact, the only case cited in the entire discussion of the

---

[8] This is not entirely accurate. The Court of Appeals decision makes no mention of *Connelly*. The reference is apparently to the Court of Appeals' reliance on *Fekete*, which does reference *Connelly* in recognizing that New Mexico's "totality of the circumstances test includes an element of police overreaching." *Fekete*, 901 P.2d at 717.

14

Court of Appeals' treatment of Elliott's confession is again this court's unpublished decision in *White*. As previously explained, *White*, involved none of the issues raised by Elliott in these proceedings and is a merely *pro forma* citation.[9]

Nevertheless, and in undertaking our own review of the state courts' rulings under § 2254(d)(1) as elucidated by *Williams* and *Van Woudenberg*, we agree that the question before us on habeas review is whether the New Mexico Court of Appeals was unreasonable in its application of the standards for voluntariness articulated in *Connelly* and applied in *Fekete* to the facts of Elliott's case. We cannot conclude that it was.

As an initial matter, we are struck by the disjunct between the conclusions reached by the Court of Appeals in review of the suppression hearing proceedings and the suppression proceedings themselves. While we do not disagree with the Court of Appeals' determination that there was "no evidence in the record to support a finding of police misconduct" (Detective Barela expressly denied he coerced or threatened Elliott and the only evidence put on by the defense was the testimony of Dr. Walters, which was used to argue that it was the heroin, not Detective Barela, that rendered Elliott's statement

---

[9]     The *White* case involved numerous challenges by an Oklahoma state prisoner to his conviction, none of which included the admission of any confession or an application of *Connelly*. 1998 WL 165162, **1-3. The principal challenge in that case, interestingly, focused on the summary appeals process used in the Oklahoma state courts and specifically on the Oklahoma Court of Criminal Appeals' summary affirmance, without written opinion, of petitioner's conviction. Not only is the case inapposite, but our affirmance of the district court's conclusion in that case that the constitution does not require appellate courts to accompany their decisions with written opinions is subject to the rules regarding citation of unpublished opinions, 10th Cir. R. 36.3, which should have discouraged the district court from relying on *White* as legal authority for any of its conclusions.

15

something other than the product of his "will") we note the trial judge did not analyze the issue as a legal question in terms of "police coercion" under *Connelly* at all. Rather, he addressed the question of voluntariness in strictly factual terms, concluding Elliott was coherent, had a sense of the present and future, and was not so overcome by the effects of heroin or heroin withdrawal that he could not comprehend what he was saying. (R. Tape No. CR-2-TS, 12/23/92.)

Nevertheless, we agree that the New Mexico Court of Appeals' decision that the admission of Elliott's statement was not an unreasonable application of *Connelly*. As we explained in *Guerro*, 983 F.2d at 1003-04, *Connelly* instructs that coercive police activity is a necessary predicate to any finding of involuntariness regardless of a suspect's mental condition; "'absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law.'" *Guerro* at 1004 (quoting *Connelly*, 479 U.S. at 164). We further explained that the constitutional due process "guarantee does not protect against conduct by private parties [citation omitted], nor does it protect a defendant from his own compulsions or internally-applied pressures which are not the product of police action." *Id*. (citing *United States v. Kelley*, 953 F.2d 562, 565 (9th Cir. 1992)(finding statement of suspect who was experiencing drug withdrawal to have been voluntary)). Under these authorities, the conclusion of the New Mexico Court of Appeals that, in the absence of evidence of any misconduct by Detective Barela, Elliott was not deprived of due process was a

reasonable application of federal law.  Accordingly, the admission of Elliott's confession cannot form a basis for invalidating his conviction under 28 U.S.C. § 2254.

As set forth above, our inability to conclude that the admission of Elliott's confession was unconstitutional precludes us from finding that counsel's performance failures at trial altered the outcome of his case under *Strickland*'s second prong.  For this reason, our determination with respect to Elliott's second claim for habeas relief necessarily disposes of his first claim as well.

## IV.  THE ADMISSION OF PRIOR BAD ACT EVIDENCE.

Elliott's final claim for habeas relief is that he was denied his Fourteenth Amendment due process right by the trial court's improper admission of prior bad act evidence.  Federal habeas corpus is limited in reviewing a question regarding the admissibility of evidence.   In order for habeas corpus relief to be granted by a federal court based on a state court evidentiary ruling, the rulings must "'render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights.'"  *Vigil v. Tansy*, 917 F.2d 1277, 1280 (10th Cir.1990)(quoting *Brinlee v. Crisp*, 608 F.2d 839, 850 (10th Cir.1979), *cert. denied*, 498 U.S. 1100 (1991)).  Trial courts have broad discretion regarding the admissibility of testimony.  *United States v. Davis*, 40 F.3d 1069, 1073 (10th Cir.1994).   Our review of the record reveals nothing constitutionally infirm in the trial court's decision to admit this evidence.

## V.  CONCLUSION.

We express our disapproval in this case of trial counsel's performance. Nevertheless, based on our independent review of the record and for the reasons stated, we AFFIRM the decision of the district court adopting the Recommendation of the Magistrate Judge that the Petition for Writ of Habeas Corpus be denied.