**UNITED STATES of America, Plaintiff,**

v.

**Russell Eugene LUTZ, Defendant.**

**No. 02–40031–01–SAC.**

United States District Court, D. Kansas.

June 4, 2002.

Marilyn M. Trubey, Office of Federal Public Defender, Topeka, KS, for Russell Eugene Lutz.

Randy Hendershot, Office of U.S. Atty., Topeka, KS, for U.S.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This case comes before the court on the defendant's following pretrial motions: Motion to Review Detention Order (Dk.13); Motion to Suppress Statement (Dk.21); Motion to Suppress Evidence (Dk.22); Motion for Disclosure of Rule 404(b) Evidence (Dk.23); and Motion for Discovery (Dk.24). The government has filed a consolidated response addressing all of the defendant's motions, except for the motion to review the detention order. (Dk.25). On May 22, 2002, the court heard evidence on the motions to suppress as well as counsels' arguments on all motions. Having reviewed all matters submitted and researched the law relevant to these issues, the court is ready to rule.

## PROCEDURAL BACKGROUND

The grand jury returned a single count indictment on February 28, 2002, charging the defendant with unlawful possession of a firearm in violation of 18 U.S.C. § 922(g). Specifically, the indictment charges that the defendant is an unlawful user of and addicted to methamphetamine and has been convicted previously of two felony convictions and that he unlawfully possessed a 9 mm. caliber pistol on or about January 6, 2002. This indictment was sealed until after the defendant's arrest on February 27, 2002.

On April 4, 2002, the magistrate judge entered an order of temporary detention, as the defendant requested a continuance of the hearing on the government's motion for detention. On April 11, 2002, the magistrate judge conducted the hearing fol-

lowing which she entered an order of detention. The magistrate judge found the evidence to be clear and convincing "that there are no conditions which the court can establish which will reasonably assure the safety of others and the community from defendant's pattern of criminal activity involving both weapons and drugs." (Dk.15, Attach.¶ 7).

## MOTION TO REVIEW DETENTION ORDER (Dk.13).

### Standard of Review

■ By statute, 18 U.S.C. § 3145(b), a defendant detained by a magistrate judge may seek review before the district court. This is a de novo review of the magistrate judge's order. *United States v. Tortora,* 922 F.2d 880, 883 n. 4 (1st Cir. 1990); *United States v. Burks,* 141 F.Supp.2d 1283, 1285 (D.Kan.2001); *see United States v. Rueben,* 974 F.2d 580, 585–86 (5th Cir.1992), *cert. denied,* 507 U.S. 940, 113 S.Ct. 1336, 122 L.Ed.2d 720 (1993). The district court conducts its own de novo determination of the facts paying no deference to the magistrate judge's findings. *United States v. Koenig,* 912 F.2d 1190, 1192 (9th Cir.1990); *United States v. Gaviria,* 828 F.2d 667, 670 (11th Cir.1987). Ultimately, the district court must decide the propriety of detention also without giving any deference to the magistrate judge's conclusion. *Id.*

■ De novo review does not require a de novo evidentiary hearing. *United States v. Burks,* 141 F.Supp.2d at 1285; *see United States v. Koenig,* 912 F.2d at 1193. The district court may elect to "start from scratch" and follow the procedures for taking relevant evidence. *United States v. Torres,* 929 F.2d 291, 292 (7th Cir.1991). The district court also may incorporate the record of the proceedings conducted by the magistrate judge including the exhibits admitted there. *United States v. Chagra,* 850 F.Supp. 354, 357 (W.D.Pa.1994); *see United States v. Mes-*

*sino,* 842 F.Supp. 1107, 1109 (N.D.Ill.1994). The district court may conduct evidentiary hearings if "necessary or desirable," and the hearings are not limited to situations where new evidence is being offered. *Koenig,* 912 F.2d at 1193. These matters are left to the district court's sound discretion. *Id.; Bergner,* 800 F.Supp. at 661. The parties agreed that the district court in ruling on the defendant's motion needs to review de novo only that evidence and arguments presented in the proceedings before the magistrate judge. The district court offered both sides the opportunity to present any additional information in support of their respective positions.

### Controlling Law

Under the Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq., the court must order an accused's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and community." *See* 18 U.S.C. § 3142(b),(c), and (e). In making this determination, the court is to consider "the available information" on the following factors: the nature and circumstances of the offense, including whether the offense is a crime of violence or involves a narcotic drug; the weight of the evidence; the history and characteristics of the person; and the nature and seriousness of the danger to any person or the community posed by a release on conditions. 18 U.S.C. § 3142(g).

■ At all times, the burden of proof remains with the government to show there is no condition or combination of conditions that would reasonably assure the accused's presence in later proceedings and/or the safety of other persons and the community, *United States v. King,* 849 F.2d 485, 489 (11th Cir.1988); *United*

States v. Orta, 760 F.2d 887, 891 (8th Cir.1985). The government must prove dangerousness to any other person or the community by clear and convincing evidence. United States v. King, 849 F.2d at 485 n. 3; 18 U.S.C. § 3142(f). Evidence is clear and convincing if it gives the factfinder "an abiding conviction that the truth of ... [the] factual contentions are 'highly probable.'" Colorado v. New Mexico, 467 U.S. 310, 316, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984) (quoting C. McCormick, Law of Evidence § 320, p. 679 (1954)).

### Analysis and Ruling

The court bases its ruling on the evidence and arguments presented to the magistrate judge and in the defendant's motion seeking review. The defendant limits his argument on review to the sufficiency of the evidence in support of the magistrate judge's finding that no conditions of release would insure the safety of the community.

Nature and Circumstances of the Offense

The defendant is charged with possession of a firearm in violation of 18 U.S.C. § 922(g). Officers found the pistol in the car that the defendant was driving. Officers also found drug paraphernalia in the car. During the traffic stop, the defendant admitted to officers that he had been in possession of methamphetamine which he had just swallowed. The magazine was in the firearm with seven rounds of ammunition in it. At the time of this arrest, he was on probation for a state felony conviction. His possession of a loaded firearm while in possession of methamphetamine weighs in favor of detention.

Weight of the Evidence

As it now stands on the record of the hearing, the weight of the evidence against the defendant is substantial. When the officers found the firearm, the defendant volunteered that, "My son called and wanted me to pick up the gun from his house."

The defendant later emotionally told officers, "I can't believe that you are putting me away for 5 years. Do you know that because of the gun, I'm going away for 5 years. Don't you feel bad?" The defendant's admissions at the time of his arrest make this a strong case on the merits. This factor weighs in favor of detention.

History and Characteristics of the Defendant

The defendant is a resident of the area with sufficient family and community ties to favor pretrial release. The defendant's employment history shows he has held jobs in the construction industry, but his employment cannot be described as stable. His criminal history is rather extensive. He has multiple felony convictions in the last fourteen years with two of those convictions being felony drug convictions. For both of the felony drug convictions, officers either found firearms in the defendant's car or a deadly weapon in the defendant's pocket. In April of 2000, the defendant was convicted of attempted aggravated burglary that involved his display of a firearm in order to force a citizen/motorist to drive the defendant and his companions to a requested location. The defendant had his probation revoked in two cases, he committed two offenses while on parole, and he was arrested for the instant offense while on probation. The report of the pretrial services officer reflects the defendant has been arrested on eleven occasions, and eight of those times involved the possession of drugs or weapons. The defendant offers that he never failed to appear in any of the prior proceedings. Nonetheless, this factor strongly favors detention in that it demonstrates the defendant's repeated failure to refrain from criminal activity while subject to the terms of court-imposed supervision. In its judgment, the court finds the cumu-

lative weight of these different factors to favor detention.

Nature and Seriousness of Danger to Any Other Person or the Community

The court believes the defendant's pattern of criminal conduct demonstrates a very real threat of continued involvement in drug trafficking and in the unlawful possession of firearms. Ongoing drug trafficking presents a serious danger to the community.

Summary

■ Based upon its de novo review of the record, the court concludes that there are no set of conditions of release which will protect the community from the danger of additional drug trafficking crimes and unlawful possession of firearms. This court's decision to detain the defendant pending trial was reached after a careful consideration of all of the facts and information offered by proffer or otherwise at the hearing before the magistrate judge. The court carefully applied those facts to the factors set forth in the Bail Reform Act. The government has carried its burden of proving by clear and convincing evidence that there is no combination of conditions that would assure the safety of others and the community if the defendant were released pending trial.

## FINDINGS OF FACT RELEVANT TO SUPPRESSION MOTIONS

Around 4:00 p.m. on January 6, 2002, the Officer Jennifer Cartmill with the Topeka Police Department was driving west on Gordon street when she observed a red Saturn turn east onto Gordon street. Based upon mug shots she had seen, Officer Cartmill recognized the driver of the Saturn as Russell Lutz and the driver of the car immediately behind the Saturn as Terry Tignor. From information she had gathered about suspects in her patrol area, Officer Cartmill knew that Lutz's driver's license was suspended, as was Tignor's.

Officer Cartmill observed that both vehicles were coming from an area where police had complaints of methamphetamine dealings and stolen property.

After turning the patrol car around, Officer Cartmill was unable to see the red Saturn. A couple of minutes later, the officer saw the red Saturn turn east onto Gordon from Clay street. She again recognized the driver to be Russell Lutz, as he turned onto Tyler and headed in the direction opposite of the officer. Officer Cartmill followed Lutz's car and activated her emergency lights. Because Lutz is tall and was driving a smaller car, Cartmill said she could see Lutz lean forward making what she believed to be a furtive movement.

As Officer Cartmill and her backup, Officer Baker, approached the Saturn, they noticed the strong odor of ammonia or cat urine coming from the car. Officer Cartmill asked to see Lutz's driver's license, and Lutz responded that his license was suspended. Using her handheld radio, Officer Cartmill contacted dispatch to confirm that Lutz's license was suspended and to learn if he had any outstanding warrants.

While waiting for dispatch to respond, Officer Cartmill observed the female passenger, who was identified as Tasha Myer, lean forward and move her arms as if hiding something. For officer safety reasons, Officer Cartmill asked Myer to step out of the car. Myer was shaking and told the officers she was pregnant and was cramping. The officers offered to call an ambulance, but Ms. Myer declined. Officer Cartmill told Ms. Myer that she was not under arrest but asked that she sit in the patrol car. At some point, Ms. Myer erupted saying if she wasn't under arrest then why am I sitting in this patrol car. She pushed past the officer and tried to get away. Because Ms. Myer appeared

under the influence of drugs and had just shoved an officer, she was placed under arrest and returned to the patrol car.

When dispatch confirmed that Lutz's license was suspended and that he had city warrants for his arrest, the officers took him into custody and placed him in Officer Baker's patrol car. Because the car was without insurance and was to be impounded, the officers searched the car finding drug paraphernalia. Prior to the search and prior to any Miranda warning, Officer Cartmill asked Lutz if there was anything illegal in the car. Lutz said there were "rigs" but no drugs in the car. As Lutz spoke, Officer Cartmill noticed him chewing on something in his mouth. Lutz complied with Cartmill's request to open his mouth, and the officer saw he was chewing plastic bags commonly associated with packaging for drugs. When Lutz swallowed, Officer Cartmill asked if he had swallowed methamphetamine, and Lutz admitted swallowing about an 8–ball of methamphetamine. Without further questioning, Lutz offered that he had also used methamphetamine earlier in the day and that he had obtained the methamphetamine from a particular location. Lutz further volunteered that there had been a burglary at his son's house and that the burglars had left "it" on the counter. Officer Cartmill asked what had been left on the counter, but the defendant did not respond to this question but repeatedly said he was "going away for a long time."

Officers searching the Saturn found a handgun under the passenger's purse on the passenger-side floorboard. They also found needles in the glove box and in a beverage can. Officers ran a check on the handgun to determine if it was stolen. The defendant motioned for Officer Cartmill to come back to the patrol car and speak with him. When Officer Cartmill walked back there, Lutz told her that his son had called and wanted him to pick up the gun and that Lutz never had the gun on his person. On the way to the jail, Lutz said that because of the gun he was going away for five years and asked the officer if she felt bad for him.

Officer Cartmill testified that Lutz was crying and appeared fearful, extremely nervous, and emotionally upset at the scene but that he was not noticeably intoxicated until after he had arrived at the jail and begun speaking rapidly and excessively. Prior to this time, Officer Cartmill observed no behavior nor responses by Lutz that indicated he did not understand the situation or did not know who he was, what he was doing, or who the officers were.

## MOTION TO SUPPRESS EVIDENCE (Dk.22).

### *Arguments*

The defendant seeks an order suppressing from evidence all items seized from the vehicle he was driving on January 6, 2002, and all statements made during the stop. The defendant argues the traffic stop here was unlawful, as the officer had not observed any traffic violation. "Even assuming that the officer, at one time, had knowledge that Mr. Lutz's driver license was suspended, that does not justify the stop on January 6, 2002, absent a showing that the officer had current information as to the status of Mr. Lutz's driver's license. Reinstatement of drivers' licenses is a common occurrence, occurring daily." (Dk.22, p. 2). The government responds that the defendant's driver's license was suspended and had been suspended since 1997. In fact, the defendant had been convicted in 1998 of driving with a suspended license.

### *Governing Law*

▇▇▇▇ Under the Fourth Amendment, a traffic stop constitutes a seizure and therefore must be "reasonable." *Dela-*

ware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). A stop is reasonable if it is based on an observed traffic violation or a reasonable articulable suspicion that such a violation has occurred or is occurring. *United States v. Botero–Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc), *cert. denied*, 518 U.S. 1007, 116 S.Ct. 2529, 135 L.Ed.2d 1052 (1996). Reasonable suspicion is "a particularized and objective basis" for suspecting the person stopped of criminal activity. *United States v. Cortez*, 449 U.S. 411, 417–418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *see also United States v. Callarman*, 273 F.3d 1284, 1286 (10th Cir.2001) ("While either probable cause or reasonable suspicion is sufficient to justify a traffic stop, only the lesser requirement of reasonable suspicion is necessary."), *cert. denied*, —— U.S. ——, 122 S.Ct. 1950, 152 L.Ed.2d 853, 70 U.S.L.W. 3697 (2002) (No. 01–9603).

■■■ When faced with a motion to suppress evidence obtained as an incident to a traffic stop, the Government must present evidence to show that the traffic stop was justified by a reasonable, articulable suspicion of illegal activity. Proof of "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, ——, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002.). In determining whether a reasonable suspicion existed, the court considers the totality of circumstances. *United States v. Sokolow*, 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). This analytical process entails making a practical determination and reaching "a common sense conclusion" based on "probabilities" and not "hard certainties." *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

### Analysis and Holding

■■■ Officer Baker here was able to articulate a reasonable suspicion which would warrant a traffic stop in this case. The officer had researched Lutz as possible drug suspect in her patrol area. She knew from her research that Lutz's driver's license was suspended. It is true that Officer Baker could have acted more prudently and confirmed the status of Lutz's license prior to making the stop. The court, however, is not concerned with prudent police procedures but with whether an officer's suspicion remains reasonable when based on facts that are subject to change.

The court recognizes that some, if not most, circumstances or facts are susceptible to change and that this likelihood does affect the reasonableness of any suspicion based on them. The court, however, is not convinced on the facts of this case that Lutz's suspended driver's license is a circumstance here so readily susceptible to immediate change as to preclude the reasonableness of Officer Baker's suspicion. When she first spotted Lutz driving from an area associated with complaints of drug trafficking, Officer Baker saw he was being followed by another drug suspect who also had a suspended driver's license. Lutz also had a prior conviction for driving with a suspended driver's license. These circumstances would suggest to a reasonable officer that the defendant was not someone who was likely to pursue the prompt reinstatement of his driver's license. The court finds that Officer Baker's suspicion is not less than reasonable based simply because of the mere possibility that Lutz could have reinstated his driver's license some time after Baker's last license check. Supported by reasonable suspicion, the initial stop of Lutz's car was lawful.

## MOTION TO SUPPRESS STATEMENT (Dk.21).

### Arguments

The defendant seeks to suppress from evidence any statements he allegedly made to law enforcement officers on January 6, 2002, for the reason they were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and were not voluntarily made. The defendant contends that he was arrested and asked if there was "anything illegal on him or in the car" without being advised of his *Miranda* rights. According to the defendant, the officer also questioned him about the contents of the car, about what he had swallowed, and about the firearm found in it without ever administering the *Miranda* warning. The defendant further argues that his statements were involuntary as he had taken drugs and the officers knew he was intoxicated when they questioned him.

In its brief and at the hearing, the government concedes the defendant's response to the officer's question about there being anything illegal in the car is inadmissible in the absence of a *Miranda* warning. The government, however, argues the officer upon seeing the defendant chew and swallow a baggie was justified on emergency grounds to ask what the defendant had just swallowed. The government contends the defendant's remaining statements were volunteered and not the result of interrogation. As for the voluntariness of any statements in light of the defendant's obvious intoxication, the government denies that the officers exploited the defendant's condition by engaging in interrogation or other coercive tactics.

### Governing Law

■■■ In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." "These safeguards include certain rights that an accused must be informed of and must waive before custodial interrogation can commence." *United States v. Bautista*, 145 F.3d 1140, 1146 (10th Cir.), *cert. denied*, 525 U.S. 911, 119 S.Ct. 255, 142 L.Ed.2d 210 (1998). There are two requirements that trigger *Miranda*: (1) "the suspect must be in 'custody,' and [(2)] the questioning must meet the legal definition of 'interrogation.'" *United States v. Ritchie*, 35 F.3d 1477, 1484 (10th Cir.1994) (quoting *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir.1993)). A defendant upon arrest must be advised of his rights before law enforcement officers began any interrogation.

■■■ For purposes of *Miranda*, interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). It is said that "Miranda applies only if an individual is subject to 'either express questioning or its functional equivalent.'" *United States v. Davis*, 40 F.3d 1069, 1078 (10th Cir.1994) (quoting *Rhode Island v. Innis*, 446 U.S. at 300–01, 100 S.Ct. 1682), *cert. denied*, 514 U.S. 1088, 115 S.Ct. 1806, 131 L.Ed.2d 732 (1995).

■■■ "Volunteered statements of any kind are not barred by the Fifth Amendment." *Miranda*, 384 U.S. at 478, 86 S.Ct. 1602. Thus, absent a showing of coercion or other misconduct by law enforcement, an arrestee's volunteered statements made before receiving the Miranda warning may be used against him. *Rhode*

*Island v. Innis,* 446 U.S. at 300–02, 100 S.Ct. 1682. "If a person voluntarily speaks without interrogation by an officer, the Fifth Amendment's protection is not at issue, and the statements are admissible." *United States v. Muniz,* 1 F.3d 1018, 1022 (10th Cir.), *cert denied,* 510 U.S. 1002, 114 S.Ct. 575, 126 L.Ed.2d 474 (1993); *see United States v. Thomas,* 1995 WL 106411, at *5 (D.Kan.Feb.13, 1995) ("A suspect's unsolicited and voluntary comments during a search are not the product of interrogation barred by the Fifth Amendment.")

▆ In *New York v. Quarles,* 467 U.S. 649, 655, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), the Supreme Court created a "'public safety' exception" to the Miranda warning requirement. The Court held that the "prophylactic" rule in *Miranda* is outweighed by the "paramount" concern for public safety when there is "an objectively reasonable need to protect the public or police from any immediate danger." 467 U.S. at 653, 659 n. 8, 104 S.Ct. 2626. In *Quarles,* officers received information that a rape suspect was in a local supermarket and that the suspect was carrying a gun. 467 U.S. at 651–52, 104 S.Ct. 2626. After arresting and handcuffing the defendant, the officer asked the defendant about the location of the gun, and the defendant nodded toward some cartons and said: "'[t]he gun is over there.'" 467 U.S. at 652, 104 S.Ct. 2626. In concluding that the concern for public safety outweighed the prophylactic rule in *Miranda,* the Court observed:

> Here, had Miranda warnings deterred Quarles from responding to Officer Kraft's question about the whereabouts of the gun, the cost would have been something more than merely the failure to obtain evidence useful in convicting Quarles. Officer Kraft needed an answer to his question not simply to make his case against Quarles but to insure that further danger to the public did not result from the concealment of the gun in a public area.

467 U.S. at 657, 104 S.Ct. 2626. The Court concluded that "the need for answers in a situation posing a threat to public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment right against self-incrimination." 467 U.S. at 657, 104 S.Ct. 2626. In devising an exception designed "to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront," the Court emphasized the distinction between questions necessary to secure the safety of police officers and the safety of the public and questions designed to elicit testimonial evidence. 467 U.S. at 658, 104 S.Ct. 2626.

▆ In determining whether the public safety exception applies, "[t]he court should not look at the subjective motivation of the individual officer, but must examine whether the facts gave rise to an objective belief that the public safety was threatened by an 'immediate danger.'" *United States v. Redmond,* 132 F.3d 44, 1997 WL 767555 (10th Cir.1997) (Table) (citing *Quarles,* 467 U.S. at 655–56, 659 n. 8, 104 S.Ct. 2626); *see United States v. Carrillo,* 16 F.3d 1046, 1049 (9th Cir.1994) ("In determining whether the public safety exception to Miranda applies, 'we ask whether there was an objectively reasonable need to protect the police or the public from any immediate danger.'") (quoting *United States v. Brady,* 819 F.2d 884, 888 n. 3 (9th Cir.1987) (quoting *Quarles,* 467 U.S. at 659, 104 S.Ct. 2626), *cert. denied,* 484 U.S. 1068, 108 S.Ct. 1032, 98 L.Ed.2d 996 (1988)).

*Analysis and Holding*

▆ Consistent with the government's concession, the court will sustain the defendant's motion and suppress his re-

sponse to Officer Baker's query about any illegal contents in the car. Because the officer's questions about the defendant was chewing and swallowed do not implicate the safety of the officers or the community in general, they are not like the questions asked in *Quarles* or in those typical cases applying the public safety exception. *See United States v. Reilly,* 224 F.3d 986, 992–93 (9th Cir.2000); *United States v. Williams,* 181 F.3d 945, 953–54 (8th Cir. 1999); *United States v. Creech,* 52 F.Supp.2d 1221, 1230–31 (D.Kan.1998), *aff'd,* 221 F.3d 1353, 2000 WL 1014868 (10th Cir.2000) (Table). This is not to say that the defendant's health and safety would not come within the terms of public safety or that *Quarles* arguably would not be analogous at the very least. *Cf. United States v. Webb,* 755 F.2d 382, 392 (5th Cir.1985). The court, however, is not satisfied that the government has carried its burden of proving the facts necessary and the law applicable for extending the *Quarles* exception to this case. The court is not prepared to base this exception on nothing more than the assumption that an immediate danger exists because the arrestee is chewing something or even because the arrestee is chewing and swallowing a plastic bag. The court will suppress the defendant's statements made in response to Officer Baker's questions about what Lutz had in his mouth and what he had swallowed. As for the defendant's other statements, the court is convinced that they were not the product of any interrogation but were unsolicited and voluntary comments.

The defendant also contends that his statements to officers were not made voluntarily because he was suffering from drug intoxication at the time his statements were given. The law does not support the defendant's broad argument that the officer's knowledge of defendant's drug use should have led them to conclude that defendant was unable to give any

statement voluntarily. The Tenth Circuit has summarized the relevant law in this way:

> If "mental impairment ... should have reasonably been apparent to ... interrogators," then "a lesser quantum of coercion [will] render the confession involuntary." *United States v. Sablotny,* 21 F.3d 747, 752 (7th Cir.1994); *see also Williams v. Collins,* 16 F.3d 626, 638 (5th Cir.) (noting as relevant to the petitioner's claim that his confession to police was involuntary, due to police coercion and to his "diminished capacity," that neither the police officers, who were experienced in detecting drug or alcohol usage, nor the petitioner's father, "testified that [the petitioner] appeared to be impaired in any way"), *cert. denied,* 512 U.S. 1289, 115 S.Ct. 42, 129 L.Ed.2d 937 (1994). However, even in such cases, for a confession to be involuntary, "the police must somehow overreach by exploiting a weakness or condition known to exist." *United States v. Robertson,* 19 F.3d 1318, 1321 (10th Cir.), *cert. denied,* 513 U.S. 906, 115 S.Ct. 271, 130 L.Ed.2d 189 (1994); *see also United States v. Guerro,* 983 F.2d 1001, 1004 (10th Cir. 1993) (same); .... In conducting this due process inquiry, we examine the totality of the circumstances. *Haynes [v. Washington ],* 373 U.S. [503] at 513, 83 S.Ct. 1336, 10 L.Ed.2d 513 [ (1963) ]; *Culombe [v. Connecticut ],* 367 U.S. [568] at 606, 81 S.Ct. 1860, 6 L.Ed.2d 1037 [ (1961) ].

*Nickel v. Hannigan,* 97 F.3d 403, 410 (10th Cir.1996), *cert. denied,* 520 U.S. 1106, 117 S.Ct. 1112, 137 L.Ed.2d 313 (1997). Under the law stated above, coercive police activity is a necessary predicate to a finding that a confession is not voluntary within the meaning of the due process clause. See *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

The government has come forth with sufficient evidence to establish that the officers were not overreaching and did not use coercion of any kind and that the officers did not exploit the defendant's physical or mental condition. Although the defendant said he had taken controlled substances on the date of his arrest, the evidence shows that his ability to give voluntary statements thereafter was not impaired to the extent that he could not give a voluntary statement. *See Elliott v. Williams*, 248 F.3d 1205 (10th Cir.) (affirming court's determination that statement by defendant who had taken heroin was voluntary and admissible), *cert. denied*, — U.S. —, 122 S.Ct. 286, 151 L.Ed.2d 211 (2001). The government has met its burden to show that defendant's statements were the product of free and deliberate choice rather than intimidation, coercion, or deception and that his statements were made in full awareness of the nature of the right being waived and the consequences of waiving.

## MOTION FOR DISCLOSURE OF 404(B) EVIDENCE (Dk.23).

The defendant requests notice of the government's intent to introduce evidence pursuant to Fed.R.Evid. 404(b). and 807. The government agrees to provide the requested notice, and the court directs the government to provide the same no later than fourteen days before trial.

## MOTION FOR DISCOVERY (Dk.24).

Citing Fed.R.Crim.P. 16 and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the defendant asks for an order directing the government to produce the following items for discovery: copy of dispatch tapes related to stop and arrest of the defendant and a copy of Officer Frisby's report on the search he and his canine conducted on the car driven by the defendant. The government responds that it will furnish the requested

copies of the dispatch tapes and the copy of Officer Frisby's report if one exists. The court directs the government to furnish promptly these matters that exist.

IT IS THEREFORE ORDERED that the defendant's Motion to Review Detention Order (Dk.13) is granted insofar as the district court has conducted a de novo review of the matters and is denied as to all other relief requested in that motion, and that the defendant will be detained pending trial pursuant to this order and the Magistrate Judge's order of detention;

IT IS FURTHER ORDERED that the defendant's Motion to Suppress Statement (Dk.21) is granted as to the defendant's response to Officer Baker's queries about any illegal contents in the car and about what the defendant was chewing or had swallowed, and the motion is denied as to all other voluntary and unsolicited comments;

IT IS FURTHER ORDERED that the defendant's Motion to Suppress Evidence (Dk.22) is denied;

IT IS FURTHER ORDERED that the defendant's Motion for Disclosure of Rule 404(b) Evidence (Dk.23) is denied as moot, as the government agrees to furnish the same no later than fourteen days before trial;

IT IS FURTHER ORDERED that the defendant's Motion for Discovery (Dk.24) is denied as moot, as the government agrees to furnish promptly those requested matters that exist.