**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 28, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

EFRAIN RIVERA-CARRERA, a/k/a
Fats,

      Defendant-Appellant.

No. 09-8007
(D.C. No. 2:07-CR-00204-ABJ)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, and **CUDAHY**[**] and **TACHA**, Circuit Judges.

A jury found defendant Efrain Rivera-Carrera guilty on two counts: (1) conspiracy both to possess with intent to distribute, and to distribute, narcotics and (2) possession of a firearm in furtherance of a drug-trafficking conspiracy. Mr. Rivera now challenges the sufficiency of the evidence and an evidentiary holding at

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**]Honorable Richard D. Cudahy, United States Court of Appeals for the Seventh Circuit, sitting by designation.

trial, as well as his sentence. These challenges lack merit. We also hold that his sentence was reasonable.

## I. INTRODUCTION

In late 2004, Domingo Costalez proposed to Carlos Quinonez of the Chiqui 30 gang an arbitrage scheme to exploit the higher price of, and insatiable demand for, drugs in Casper, Wyoming. With the help of others, Carlos and his brother Javier Quinonez began transporting drugs from Denver to Casper, where they sold the drugs at a significant markup. Finding minimal demand for other illicit substances, their focus shifted to transporting and selling methamphetamines.

In 2005, Javier hired appellant Efrain Rivera-Carrera (a/k/a "Fats") to join the operation. The two men grew up in the same neighborhood outside of Denver, and were both members of the Chiqui 30, a local gang whose primary activities were "[b]uyings, shootings, sell[ing] drugs, mak[ing] money." App. at 149. Mr. Rivera worked as the group's driver, transporting methamphetamines to Casper and returning to Denver with the proceeds from these sales because the others thought that Mr. Rivera was the only member of the group with a valid driver's license. Once, while moving $20,000 in drug proceeds back to Denver, a state trooper stopped Javier and Mr. Rivera, but the trooper did not find the money. In all, Mr. Rivera drove to Casper roughly fifteen times and, at least twice, he and Javier carried between one-half and one pound of methamphetamines. Javier often carried a nine-millimeter firearm with him in the vehicle when he and Mr. Rivera dropped off drugs

in Casper, especially at night. Mr. Rivera occasionally showed off his own .357 Magnum, which he suggested he had with him always.

But Mr. Rivera wore other hats in this operation. Aside from chauffeuring methamphetamines and drug money, he purported to act as the team's "muscle," which involved "roughing people up for money." App. at 188. On one occasion in July of 2005, Mr. Rivera helped bring dealer Daniel Anderson to visit Javier, who held a gun to Anderson's head and warned him not to cooperate with law enforcement. At another point, possibly in the winter of 2006, Mr. Rivera convinced Costalez to come to a Taco John's in Casper so that Carlos could address Costalez and Michael Williams' drug debts. At the Taco John's, Carlos punched Williams and others took Costalez back to a motel where Carlos roughed him up.

Mr. Rivera participated in the other stages of the operation. He watched as Javier and others "cut" pounds of methamphetamines by mixing them with methylsulfonylmethane (commonly known as "MSM") and packaged the mixture. At one point, Carlos strapped two vacuum-sealed bags of this mixture to Mr. Rivera's body and then sent him on a bus to Casper. Mr. Rivera also sold methamphetamines himself. For example, Costalez delivered Anderson's leftover methamphetamines to Mr. Rivera and Javier while the men were in Casper, and Mr. Rivera remained at Liz Adams' house to sell it. On another occasion, Mr. Rivera went to the garage of Armour Jolley, a Casper-area drug dealer. Before Mr. Rivera arrived, Jolley had no drugs but, after Mr. Rivera left, Jolley had everything he needed to get himself and

another local drug dealer, Robert Johnson, high.

In contrast, Mr. Rivera testified that he had turned from gang life at about age 18 when his brother was shot and killed in a fight with gang members. Mr. Rivera claimed that he was merely a driver in the Quinonez brothers' gun-running operation between Denver and Casper. He explained that he never saw any drugs, in part because he was incarcerated from November 2005 to January 2006, but he did admit using cocaine and marijuana. Mr. Rivera acknowledged that, in the spring of 2006, Carlos gave him three ounces of cocaine to sell, but Mr. Rivera claimed he used it all himself. He explicitly denied that he ever took drugs to Casper or that he collected money for the Quinonez brothers.

At the close of the five-day trial, the jury found Mr. Rivera guilty on both counts. He was sentenced to 151 months in prison on Count 1, 60 months in prison on Count 2, to run consecutively and 5 years of supervised release, with deportation proceedings to commence at the end of his term (Mr. Rivera illegally immigrated at the age of one). Mr. Rivera now appeals his conviction and sentence, contending that the district court had insufficient evidence to uphold his convictions, that it wrongfully admitted hearsay and that it imposed an unreasonable sentence.

## II. DISCUSSION

### A. Sufficiency of the evidence.

Mr. Rivera argues that the evidence does not establish he was involved in the criminal conspiracy to distribute methamphetamine, cocaine or marijuana, because

the evidence did not prove he was aware of the goal of the others' conspiracy, or at least, he did not know that the drugs he was transporting with Javier and others would be sold in Casper. Moreover, he argues that he was not a willing participant with an intent to advance the purpose of the conspiracy because he was merely an innocent drug user and driver, whose perception was altered by long-term drug use, ignorant of the criminal conspiracy around him.

> We review de novo whether the government presented sufficient evidence to support a conviction. In so doing, we view the facts in evidence in the light most favorable to the government. We will not weigh conflicting evidence or second-guess the fact-finding decisions of the jury. Rather, our role is limited to determining whether a reasonable jury could find guilt beyond a reasonable doubt, based on the direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom.

*United States v. Sells*, 477 F.3d 1226, 1235 (10th Cir. 2007) (internal citations and quotations omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

To convict a defendant of conspiracy under 21 U.S.C. §§ 841(a)(1) & (b)(1)(A), 846, the government must present direct or circumstantial evidence to prove beyond a reasonable doubt that: "(1) two or more persons agreed to violate the law, (2) the defendant knew the essential objectives of the conspiracy, (3) the defendant knowingly and voluntarily participated in the conspiracy, and (4) the alleged coconspirators were interdependent." *United States v. Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006); *accord United States v. Dunmire*, 403 F.3d 722, 724 (10th Cir. 2005). To prove knowledge of the conspiracy, "the government does not

have to show the defendant knew all the details or all the members of a conspiracy

. . . . [T]he government needs only to demonstrate the defendant shared a common

purpose or design with his alleged coconspirators." *Yehling*, 456 F.3d at 1240 (citing

*United States v. Evans*, 970 F.2d 663, 669 (10th Cir. 1992)). On the other hand,

merely associating with known criminal conspirators or purchasing drugs for

personal use is insufficient to establish participation in a conspiracy. *United States*

*v. Powell*, 982 F.2d 1422, 1429 (10th Cir. 1992).

Mr. Rivera knew the object and extent of the Quinonez brothers' conspiracy

both to posses with the intent to distribute, and to distribute, 500 grams or more of

mixtures containing methamphetamine, cocaine or marijuana, *see* 21 U.S.C. §

841(a)(1) & (b)(1)(A), and knowingly participated in it. There is trial evidence that

he watched the conspirators prepare and package methamphetamines and purchase

narcotics from one another and, in fact, sold drugs and transported two pounds of

methamphetamines on his person, *see United States v. Caro*, 965 F.2d 1548, 1556

(10th Cir. 1992) (a defendant's delivery of large quantities of drugs provides

circumstantial evidence that he is not merely a customer of the conspiracy); *Powell*,

982 F.2d at 1430 (10th Cir. 1992) (intent to distribute may be inferred by the amount

of drugs involved), drove drugs to Casper, *see United States v. Gwathney*, 465 F.3d

1133, 1143 (10th Cir. 2006) (a jury may permissibly infer that a driver has

knowledge of the contraband within his vehicle) and picked up a safe containing the

proceeds of the operation. *Compare Evans*, 970 F.2d at 672-73 (holding as sufficient

evidence of participation in a drug conspiracy a co-conspirator's delivery of drugs, minor drug sales, participation in arguments about drug debts, in addition to a few incidents when he was merely present during drug-related transactions) *with id*. at 672-74 (holding as insufficient evidence that the defendant had purchased a small amount of drugs on one occasion and twice loaned the conspiracy some scales but never attended any meetings or transactions central to the conspiracy). Viewing the trial evidence in the light most favorable to the government, we hold that a reasonable jury could have found Mr. Rivera guilty of the conspiracy count.

We pause for a moment on Mr. Rivera's argument that he did not know the object of the conspiracy because of his drug-use-induced mental deficiencies. In some cases, we have held that voluntary intoxication might prevent a defendant from forming the requisite *mens rea* for a specific-intent crime. *See United States v. Jackson*, 213 F.3d 1269, 1291-94 (10th Cir. 2000), *vacated on other grounds*, 531 U.S. 1033 (2000). However, a defendant's status as a drug addict is never enough to upend a conviction. *See Jackson*, 213 F.3d at 1294. Instead, there must be evidence that the defendant was so mentally incapacitated that he was "unable to facilitate the transactions." *Id*. at 1291. At trial, evidence showed that Mr. Rivera drove for his co-conspirators and transported methamphetamines and drug proceeds. This evidence, as well as the wide variety of events when Mr. Rivera witnessed the various stages of trafficking, would allow a reasonable jury to conclude that Mr. Rivera had the requisite mental state knowingly and voluntarily to participate in the distribution of

drugs.

Likewise, Mr. Rivera argues that the only evidence to support his conviction under the 18 U.S.C. § 924(c)(1)(A) count was that he drove Javier to Casper, where Javier purchased guns for himself and that Mr. Rivera had a firearm in Denver, not in Casper. We may sustain his conviction if the government presented sufficient evidence that (1) the defendant possessed the firearm and (2) this possession was in furtherance of a drug-trafficking crime. *See* 18 U.S.C. § 924(c)(1)(A); *United States v. Poe*, 556 F.3d 1113, 1127 (10th Cir.), *cert. denied*, 130 S. Ct. 395 (2009). A defendant possesses a firearm "in furtherance" if the firearm "furthered, promoted or advanced" a drug crime. *See Poe*, 556 F.3d at 1127 (internal citations omitted); *cf. United States v. Avery*, 295 F.3d 1158, 1175 (10th Cir. 2002) (the presence of the firearm cannot be the result of accident or coincidence). We evaluate "the type of drug activity being conducted, the accessibility of the firearm, the type of firearm, the legal status of the firearm, whether the firearm is loaded, proximity of the firearm to drugs or drug profits, and the time and circumstances under which the firearm is found." *United States v. Basham*, 268 F.3d 1199, 1208 (10th Cir. 2001). That is, a nexus must exist between the weapon and the underlying crime, however this nexus does not need to be strong, and it is satisfied even when a defendant "intentionally [keeps] a firearm available while conducting a drug transaction." *United States v. Rogers*, 556 F.3d 1130, 1140 (10th Cir.), *cert. denied* 129 S. Ct. 2783 (2009).

The evidence in this case is similar to that in which we have upheld §

924(c)(1)(A) convictions involving a firearm used in furtherance of a drug-trafficking conspiracy. *See United States v. Richardson*, 86 F.3d 1537, 1548-49 (10th Cir. 1996) (upholding § 924 conviction related to the underlying conspiracy because the defendant drove with a gun while on his way to a drug transaction, but vacating § 924 conviction related to the possession of methamphetamines because the government had no evidence the defendant had a firearm during a drug transaction). "A firearm carried while a defendant commits a drug-trafficking crime may facilitate the crime by preventing interference from others... [d]rug traffickers may carry weapons to protect their merchandise, their cash receipts, and to intimidate prospective purchasers." *United States v. Burkley*, 513 F.3d 1183, 1190 (10th Cir. 2008) (internal quotation omitted); *see also United States v. Sherman*, 551 F.3d 45, 49-50 (1st Cir. 2008), *cert. denied* 129 S. Ct. 2066 (2009) (holding that a sufficient nexus exists where the firearm protects drugs, drug proceeds or is used to enforce drug payments); *United States v. Doddles*, 539 F.3d 1291, 1295 (10th Cir. 2008) (upholding an "in furtherance" conviction because firearms were found near drugs and drug proceeds, and the defendant and other gang members routinely carried guns during the course of the conspiracy and used them to fight a rival gang); *United States v. Trotter*, 483 F.3d 694, 702 (10th Cir. 2007) (explaining that a court may sustain an "in furtherance" conviction for use of a firearm to protect oneself against a robbery of drug proceeds or to enforce payment for drugs), *vacated on other grounds by*, 552 U.S. 1090 (2008). We cannot say that the jury's verdict on this issue

was unreasonable, since the evidence presented allowed it to conclude that Mr. Rivera was armed while transporting drug-sale proceeds to Denver and, because he implied that he was generally armed, also to conclude that he was armed while delivering drugs in Casper and while encouraging others to pay their drug debts. *Cf. United States v. Rodriguez-Moreno*, 526 U.S. 275, 281-82 (1999) (Section 924 count may be charged in any venue where the underlying crime may be charged even if the active use of the gun took place in another jurisdiction); *United States v. Brown*, 400 F.3d 1242, 1249-51 (10th Cir. 2005) (applying *Rodriguez-Moreno* to a conviction for carrying a firearm during, and in relation to, a drug-trafficking offense).

**B. Admission of co-conspirators' statements**.

Mr. Rivera complains that the district court improperly admitted hearsay statements by misapplying the rule for admitting statements by co-conspirators. The challenged statements are that Anderson and/or his girlfriend Chrianna Michaels told Amber Bertagnole that Mr. Rivera and Javier were distributing methamphetamines and collecting money in Casper and that Mr. Rivera and Javier were waiting at Adams' house to collect drug money.[1]

The admission of statements over a hearsay objection is reviewed for an abuse of discretion, under a heightened deference standard because of the fact-

---

[1] Mr. Rivera also argues that Robert Johnson's testimony included inadmissible hearsay. The record shows that some of these challenged statements were actually made by Mr. Rivera, so they were correctly admitted. Likewise, the district court correctly excluded statements made to Johnson by a prisoner named Simon.

intensive nature of the inquiry. *See United States v. Pursley*, 577 F.3d 1204, 1220 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1098 (2010). A district court properly admits statements as non-hearsay when it establishes that "(1) a conspiracy existed; (2) the declarant and the defendant were both members of the conspiracy; and (3) the statements were made during the course of, and in furtherance of, the conspiracy." *United States v. Williamson*, 53 F.3d 1500, 1517-18 (10th Cir. 1995); *see* Fed. R. Evid. 801(d)(2)(E) (defining as non-hearsay "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy"). "In furtherance" means that the statements "are intended to promote the conspiratorial objectives." *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986) (internal citations omitted). We have already discussed the conspiracy, so we address the second two elements.

The trial witness need not be a co-conspirator, so it does not matter whether Bertagnole was a co-conspirator when she heard the statements because Anderson was a co-conspirator, *see Williamson*, 53 F.3d at 1519 (holding that exception applies whenever the out-of-court declarant is a co-conspirator).[2] But, the fact that Bertagnole was initially a peripheral player (although she was later charged with conspiracy to distribute drugs) makes it harder for the government to establish the third, "in furtherance" element. Statements that describe the role of

---

[2] So, to the extent that Michaels, a non-conspirator, made the statements to Bertagnole, they are hearsay.

one conspirator in relationship to another conspirator are "in furtherance" of the conspiracy. *See Williamson*, 53 F.3d at 1520; *United States v. Smith*, 833 F.2d 213, 219 (10th Cir. 1987). It seems doubtful that a conspirator's explanation of the players involved in a conspiracy to an unconnected bystander is "in furtherance" of the conspiracy. Even if, however, the statements were improperly admitted, this testimony was cumulative of evidence presented at trial, so that any error was harmless.

**C. Sentencing issues.**

Mr. Rivera contends that the sentencing court's within-Sentencing Guidelines sentence was unreasonable and that the district court improperly applied an enhancement and failed to apply a downward variance. In addition, Mr. Rivera contends that the sentence was unreasonable because the district court should have imposed a below-Guidelines sentence to address his good character, cultural assimilation and impending deportation and should have further reduced his sentence to address disparities with the sentences of his co-defendants. The district court applied a two-level enhancement for obstruction of justice, a three-level downward variance to avoid unwarranted disparities and declined to apply a downward variance for Mr. Rivera's purported minor role.

Sentences are reviewed for their procedural and substantive reasonableness. *See United States v. Munoz-Nava*, 524 F.3d 1137, 1146 (10th Cir. 2008). "We may not examine the weight a district court assigns to various § 3553(a) factors,

and its ultimate assessment of the balance between them, as a legal conclusion to be reviewed de novo. Instead, we must 'give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.'" *United States v. Smart*, 518 F.3d 800, 807-08 (10th Cir. 2008) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).

### 1. Minor-role adjustment.

Mr. Rivera argues that, because he served only as a driver, he should be granted a lesser sentence since he was less culpable than his co-defendants. "We review the district court's factual findings regarding a defendant's role in the offense for clear error and give due deference to the court's application of the sentencing guidelines to the facts." *United States v. James*, 157 F.3d 1218, 1219 (10th Cir. 1998). The defendant must show by a preponderance of the evidence that he was a minor participant, and his simple statement that he was a minor participant is insufficient. *See* U.S.S.G. § 3B1.2 cmt. n. 3(C); *United States v. Mendoza*, 468 F.3d 1256, 1264 (10th Cir. 2006). A minor participant "plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2 cmt. n.3(A); *see also United States v. Salazar-Samaniega*, 361 F.3d 1271, 1277 (10th Cir. 2004) (internal citations omitted) (explaining that the inquiry should "focus upon the defendant's knowledge or lack thereof concerning the scope and structure of the enterprise and of the activities of others involved in the offense.") Although drug-courier

defendants in this circuit have received minor role reductions, *see, e.g.*, *United States v. Zapata*, 546 F.3d 1179, 1185 (10th Cir. 2008), *cert. denied sub nom Galvan v. United States*, 129 S. Ct. 2069 (2009) (noting, but not discussing, couriers who received a minor role reduction), we recognize no *per se* rule that drug couriers receive minor role variances. *See United States v. Eckhart*, 569 F.3d 1263, 1276 (10th Cir. 2009), *cert. denied sub nom Cardenas v. United States*, 130 S. Ct. 1752 (2010); *United States v. Ballard*, 16 F.3d 1110, 1115 (10th Cir. 2004) (explaining that it is unproductive to attempt to evaluate whether a drug courier is less culpable than a seller because both are indispensable to the operation).

The district court weighed the "extensive presence" of Mr. Rivera in both Denver and Casper during the relevant period and held that a minor role adjustment was unwarranted. The district court did not clearly err in refusing to find that Mr. Rivera played a minor role. Trial evidence showed that Mr. Rivera transported large quantities of methamphetamines on more than one occasion, collected drug money, and carried a weapon while moving proceeds from the sale of drugs and while helping co-conspirators to collect their debts. *See, e.g.*, *Mendoza*, 468 F.3d at 1264 (holding that no role reduction was warranted when the defendant made multiple trips with a large quantity of methamphetamines). The district court committed no clear error in rejecting this request.

### 2. Obstruction-of-justice enhancement.

Mr. Rivera also argues that he should not have received a sentence

enhancement for obstruction of justice. He contends that he had no specific intent to commit perjury, that his mental abilities, perception and memory may have been damaged due to his long-time drug use and that the district court did not specify what statements constituted perjury.

We "review the district court's factual findings as to the obstruction of justice under the clearly erroneous standard, and review *de novo* the district court's legal interpretation of the Sentencing Guidelines." *United States v. Hawthorne*, 316 F.3d 1140, 1145 (10th Cir. 2003) (internal quotations omitted). Testimony is not perjury if it based on mistakes, forgetfulness or confusion, U.S.S.G. § 3C1.1 cmt. n. 2, and the fact that a defendant testifies as to his innocence and is later found guilty does not, by itself, justify a perjury enhancement. *See United States v. Chavez*, 229 F.3d 946, 955 (10th Cir. 2000) (explaining that if the court equated guilt with perjury it would impinge on a defendant's constitutional right to testify). Instead, to uphold an enhancement, we require the district court to find that the defendant made: (1) a false statement under oath, (2) concerning a material issue, and (3) did so willfully. *Hawthorne*, 316 F.3d at 1146 (citing *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)). We require the district court to be explicit about which statements constituted perjury by making particularized findings, including whether the false statements were made willfully. *See, e.g.*, *id.*; *cf. United States v. Parker*, 594 F.3d 1243, 1251 (10th Cir. 2010), *petition for cert. filed*, (U.S. Jun. 2, 2010) (No. 09-11219).

In the present case, the district court heard the parties' arguments regarding Mr. Rivera's statements and held:

> The jury found the defendant to be guilty. It found beyond a reasonable doubt the quantity of drugs the defendant was involved in over a short period of time. And a review of this matter by the probation officer found that the defendant's testimony was at total variance, and represented a total denial except for personal use of drugs, from the testimony of all of the other witnesses who testified at trial. I find that the obstruction determination in this matter is well supported, is an appropriate one, and that under the doctrine of *Dunnigan* should be imposed.

App. at 570. The first two of the three requirements for perjury were satisfied when the trial court judge identified both the false representations made by Mr. Rivera and the fact that these statements were made while he was under oath. *Hawthorne*, 316 F.3d at 1146; U.S.S.G. § 3C1.1 cmt. n.6 ("Material" describes "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination"). The judge's statement that Mr. Rivera's testimony was "at total variance, and represented a total denial except for personal use of drugs," adequately expressed the breadth of his false statements (although more specificity about the false testimony is preferable). *See Hawthorne*, 316 F.3d at 1146 ("[The Tenth Circuit] only requires that "the district court [] 'generally identify the testimony at issue...so that when we review the transcript we can evaluate the *Dunnigan* findings of the elements of perjury against an identified line of questions and answers without having simply to speculate on what the district court might have believed was the perjurious

- 16 -

testimony.'") (citing *United States v. Massey*, 48 F.3d 1560, 1574 (10th Cir. 1995) (remanding to allow the trial court to make particularized findings)).

Under Tenth Circuit precedent, however, the district court erred by failing to make particularized findings that Mr. Rivera's false statements were willful–instead, it noted that the probation officer found Mr. Rivera's testimony at total variance from that of the other witnesses and represented a "total denial," which doesn't necessarily imply a finding that the defendant willfully lied. Similarly, in another case, we found the following statement lacking and remanded for re-sentencing:

> Finally, with regard to the objection concerning the obstruction of justice, I accept the adjustment as proposed by the probation office. I accept and concur in the government's position that the adjustment is justified.
>
> Again, I tried the case. I heard Mr. Copus's testimony. I also heard the testimony of Special Agent Damron and others. There is no doubt Mr. Copus lied, committed perjury. I was here to here [sic] it. I have no doubt about it. He obstructed justice, and he shall be dealt with accordingly with that adjustment as called for in the-under the applicable authorities.

*United States v. Copus*, 110 F.3d 1529, 1536-37 (10th Cir. 1997).

We would strongly advise the district court, in future cases, clearly to identify each of the perjury factors and to tie a finding of willfulness more tightly to the false statements. Nevertheless, the trial court's statement is clearly

sufficient under *Dunnigan*,[3] and we agree with the government that the trial record demonstrates that Mr. Rivera's material testimony is sufficiently at odds with all the other witnesses' testimony to support a finding that his statements were willfully false. For example, Mr. Rivera specifically denied that he agreed to drive drugs, although Javier testified that they drove them together on multiple occasions. Likewise, Mr. Rivera denied delivering drugs in Casper, collecting money there or even merely knowing that all of his friends and acquaintances who testified were involved in selling drugs, although trial witnesses including Javier, Carlos and Jose Manuel Chavez consistently testified at trial that Mr. Rivera delivered, collected and knew of others' involvement in drug sales– this last, a glaring intentional falsity combined with Mr. Rivera's admission that he was a drug user who procured drugs from several members of the conspiracy. On review, therefore, given the sweeping and material nature of Mr. Rivera's false

---

[3] In *Dunnigan*, the Supreme Court upheld the following brief finding on the obstruction of justice argument:

> The court finds that the defendant was untruthful at trial with respect to material matters in this case. The defendant denied her involvement when it is clear from the evidence in the case as the jury found beyond a reasonable doubt that she was involved in the conspiracy alleged in the indictment, and by virtue of her failure to give truthful testimony on material matters that were designed to substantially affect the outcome of the case, the court concludes that the false testimony at trial warrants an upward adjustment by two levels.

*Dunnigan*, 507 U.S. at 90-91, 95 ("Given the numerous witnesses who contradicted respondent regarding so many facts on which she could not have been mistaken, there is ample support for the District Court's finding.")

denials, we find sufficient record evidence that Mr. Rivera willfully made false statements and, therefore, that the district court judge correctly applied the enhancement.[4]

Moreover, the district court explicitly stated during Mr. Rivera's sentencing that "[t]he Court notes that the same sentence would be imposed even if the advisory guideline range should be determined to be improperly calculated." *See* App. at 587-88; *see also United States v. Medina-Estrada*, 81 F.3d 981, 987 (10th Cir. 1996) (declining to remand for similar reasons even though the district court clearly erred by failing to adequately identify the perjurious statements at trial); *United States v. Westover*, 435 F.3d 1273, 1278-79 (10th Cir. 2006) (declining to remand in part because the district court did not indicate that it would see the matter differently on remand); *cf. United States v. Todd*, 515 F.3d 1128, 1135 (10th Cir. 2008) (reviewing errors in calculating the applicable Guidelines range for harmless error).

### 3. Substantive reasonableness of Mr. Rivera's sentence.

Mr. Rivera contends that the district court should have sentenced him to the statutory minimum because of his alien status, tight-knit family and exemplary behavior while incarcerated. Because the district court granted Mr. Rivera a three-

---

[4] As discussed earlier regarding the possible connection between Mr. Rivera's drug-addled brain and his ability to commit the offenses of conviction, we find nothing in the record to require a remand for the district court to address whether Mr. Rivera was too incapacitated by drug use to form the mental state needed to commit perjury.

level variance from Guidelines range, we do not presume that his sentence was reasonable. *See United States v. Wilken*, 498 F.3d 1160, 1171-72 (10th Cir. 2007). Mr. Rivera, however, has not raised any arguments that allow us to conclude that the district court abused its discretion and imposed an unreasonable sentence. *See United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1216 (10th Cir. 2008). The district court judge listened to Mr. Rivera's arguments regarding the positive and negative aspects of his personality and his behavior and finely calculated his sentence with a consideration of the relevant factors. Mr. Rivera has not met his burden to demonstrate that the district court abused its discretion.

Similarly, Mr. Rivera requests that we remand to allow the district court to impose a further below-Guidelines sentence to address unwarranted disparities. The district court granted the defendant a downward variance, lowering his advisory sentencing range from a level of 210 to 262 months to a level of 151 to 188 months, to place Mr. Rivera's sentence within the range of the others who were similarly involved in the conspiracy, which is a permissible adjustment, *see Zapata*, 546 F.3d at 1194, but Mr. Rivera has not presented evidence that would allow us to hold that the district court abused its discretion in declining to impose a more significant downward adjustment.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.


ENTERED FOR THE COURT


Richard D. Cudahy
Circuit Judge