**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 12, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

RICKY STONER, JR.,

Defendant - Appellant.

No. 11-6071
(D.C. No. 5:10-CR-00088-M-1)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **HOLLOWAY**, and **O'BRIEN**, Circuit Judges.

Ricky Stoner, Jr., was convicted by a jury of being a felon in possession of a

firearm and ammunition and later sentenced to 51 months imprisonment. He claims

statements he made to a police officer were improperly admitted at trial and a sentencing

enhancement for obstruction of justice was wrongly applied. We affirm.

## I.   FACTUAL BACKGROUND

On February 2, 2010, security guards Terry Dodds and Marc Brown were

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1.
It is appropriate as it relates to law of the case, issue preclusion and claim preclusion.
Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A).
Citation to an order and judgment must be accompanied by an appropriate parenthetical
notation – (unpublished). *Id.*

patrolling an apartment complex in Oklahoma City. At approximately 8:20 p.m., while on the second floor of one of the buildings in the complex, they heard a woman screaming. When they looked out the window, they saw a woman sitting in a vehicle and a man standing outside the vehicle. The woman was yelling at the man to "stop" and "get in the car." (R. Vol. 4 at 63.) The man, later identified as Stoner, was holding a gun. He was waving the gun around and banging it on the ground. Dodds and Brown ran outside. When they arrived, the woman, later identified as Stoner's wife, was in the driver's seat with Stoner in the front passenger seat. Dodds and Brown approached the woman. While they were talking to her, they observed Stoner was "really nervous" and reaching for something on his right side. (R. Vol. 4 at 93.) Brown told Stoner to keep his hands visible. Dodds went around the vehicle to the front passenger door and opened it. Between the front passenger seat and door he noticed a gun, the muzzle pointing toward him. Dodds grabbed Stoner and removed him from the vehicle.

Stoner "ball[ed] up his fist[s] and lift[ed] his pants up in an aggressive manner." (R. Vol. 4 at 66.) Brown, with his taser drawn, joined Dodds. Several times Dodds and Brown ordered Stoner to place his hands on the hood of the vehicle. Brown told Stoner that if he did not comply, he would tase him. Stoner did not comply. Stoner then reached for his waistband, pivoted and attempted to run. Brown tased him with 50,000 volts of electricity for five seconds; one prong hit Stoner in the lower back and the other prong hit him in the left calf. Stoner collapsed to the ground. At some point during the exchange, Dodds placed the gun on top of Stoner's vehicle. It was a Hi-Point 9 mm pistol with scuff marks, presumably from being banged against the ground.

Before long Officer Alex Edwards of the Oklahoma City Police Department arrived on the scene.[1]  He handcuffed Stoner[2] and walked him to his patrol car.  He noted several things about Stoner:  he was slurring his words and sweating profusely; he was erratic, meaning "he would calm down slightly, and then he would get real agitated real quick"; and he had trouble standing on his own – Edwards had to hold him on the walk to the patrol car.  (R. Vol. 4 at 119.)  Believing Stoner to be under the influence of phencyclidine (PCP), Edwards asked:  "Are you [all] right[?] . . . [W]hat are you on?  Man, are you on something?"  (R. Vol. 4 at 230.)  He then asked Stoner if he was on "[w]ater" (the street name for PCP).  (*Id.*)  Stoner replied:  "Yeah, a little bit."  (*Id.* at 230.)

Once Stoner was secured in the patrol car, Edwards located the gun on the ground in front of the front passenger door.[3]  It was loaded, but jammed.  Edwards seized the gun.  He then returned to his patrol car and ran a records check on Stoner.  Stoner asked Edwards why he was being arrested.  Edwards responded:  "Well, you know, is that your weapon?"  (R. Vol. 4 at 231.)  When Stoner did not respond, Edwards asked again, "Is that your weapon?"  (*Id.* at 232.)  Stoner replied, "Well, it jammed on me."  (*Id.* at 232.)  Edwards said, "So your weapon jammed on you?"  (*Id.*)  Stoner responded, "It jammed

---

[1] During the encounter with Stoner, Dodds reported the incident to his dispatcher, who, in turn, called the Oklahoma City Police Department.

[2] Dodds and Brown testified that they handcuffed Stoner.  This factual discrepancy is immaterial to our resolution of the case.

[3] It may have fallen from the roof of the car, where Dodds placed it; the record is unclear.

on me." (*Id.*) A few minutes later Edwards learned of Stoner's prior felony conviction; at that time he placed Stoner under arrest.

Because Stoner had been tased and was apparently under the influence of PCP, Edwards drove him to the hospital and then to the county jail. During transport, Edwards detected the smell of PCP emanating from Stoner.

## II.    PROCEDURAL BACKGROUND

Stoner was indicted for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[4] At trial, during Edwards' direct examination, the government attempted to elicit his testimony concerning Stoner's statements about using PCP and possession of the gun. Stoner objected claiming the statements were inadmissible because they were taken in violation of his *Miranda* rights.[5] The government argued *Miranda* did not apply because Stoner was not in custody at the time the statements were made, but it nevertheless abandoned the inquiry and the statements did not come in at that time.

Stoner testified as follows: On the day of the incident, he was supposed to pick up his wife from work at 5:30 p.m. but did not arrive until 5:45 p.m. She was angry and acting "hysterical" because he was late. (R. Vol. 4 at 145.) She grabbed the car keys from him and told him to get out of the car. He complied and began walking. She eventually drove up to him and told him to get in the car, which he did. She drove to a convenience store where he bought cigars and cigarettes. She then drove to another

---

[4] The indictment also included a forfeiture count which is not at issue here.

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

- 4 -

convenience store where she took the keys, got out of the car and started walking down the street. Because he was tired, Stoner decided to take a nap in the car. His wife later returned to the vehicle and drove to the apartment complex. When he woke up, he asked, "What are we doing here?" (R. Vol. 4 at 147.) His wife was still "hysterical." (*Id.* at 148.) Because he had $3000 in his pockets (allegedly from a tax refund), he decided to walk to his grandmother's house, which was nearby, in order to avoid being robbed. When he got out of the vehicle, he was tased. He did not remember anything after being tased except for briefly waking up in the patrol car and then later at the hospital. He also remembered officers at the county jail throwing him in a room and stripping him naked. When he was released from jail his money was missing. He believed his wife took him to the apartment complex so he could be robbed.

During cross-examination, the government asked Stoner whether he was under the influence of PCP at the time of the incident. He said no. When asked whether there was gun in the car on the day of the incident, he replied, "No, sir, not to my knowledge." (R. Vol. 4 at 166.) Based on these denials, the government sought to impeach him with the statements he made to Edwards.

The court held a *Jackson v. Denno*[6] hearing out of the jury's presence to determine whether Stoner's statements were voluntary. Edwards' hearing testimony established the

---

[6] *See Jackson v. Denno*, 378 U.S. 368, 380 (1964) ("A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined."); *see also* 18 U.S.C. § 3501(a) ("Before [a] confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness.").

following: (1) Stoner never complained of pain from being tased (even though the taser's prongs were still in his back and leg when he made the statements) or from being handcuffed; (2) Edwards used a calm voice in asking Stoner if he was under the influence of PCP; (3) Stoner in no way indicated an unwillingness to speak to Edwards and appeared competent to answer Edwards' questions; (4) Edwards used no physical force, threats or other forms of coercion against Stoner, nor did he draw his weapon, or even have his hand on it, during the encounter; and (5) other responding officers did not arrive until after Stoner was in Edwards' patrol car and were not around Stoner when he made the statements. Edwards described his conversation with Stoner as "two guys on the street" talking. (R. Vol. 4 at 187.)

The court decided Stoners' statements were voluntary. Despite acknowledging that Stoner had been tased, had not been *Mirandized*, was not free to leave, was in the back of the patrol car at the time he made incriminating statements and other officers were in the vicinity, it determined the statements were not coerced or compelled. It considered Edwards to be a credible witness.

After the *Jackson v. Denno* hearing, the government resumed its cross-examination of Stoner. He again stated he did not use PCP or possess a gun the day of the incident. He also said he did not recall any conversations with Edwards regarding whether he had used PCP or whether the gun was his. In rebuttal, the government again called Edwards who recounted the statements Stoner had made to him and the conditions under which they were made. The jury found Stoner guilty.

A presentence report (PSR) was prepared. It calculated the base offense level to

be 20 because the offense was committed subsequent to a felony conviction for a controlled substance offense. *See* USSG §2K2.1(a)(4).[7] It added two levels for obstruction of justice based on Stoner having committed perjury at trial when he denied possessing a firearm. *See* USSG §3C1.1. It determined Stoner's Criminal History Category to be III. With that criminal history and a total offense level of 22, the advisory guideline range was 51 to 63 months imprisonment.

Stoner objected to the obstruction of justice enhancement. As to his testimony denying the use of PCP, he argued that possibly being under the influence of PCP was not material to a weapons offense. With respect to his testimony denying he possessed a weapon, he claimed it was merely a denial of guilt, which cannot be used as an obstruction of justice enhancement. He also moved for a downward variance under the 18 U.S.C. § 3553(a) factors, claiming: (1) he was 35 years old and "a productive individual"; (2) he needed mental[8] and substance abuse treatment; and (3) he was committed to his family. (R. Vol. 1 at 170.) He also argued that "[t]he facts, characteristics and circumstance of this case, taken in their entirety, distinguish this case as sufficiently atypical and warrant a sentence lower than called for under the

---

[7] Stoner was sentenced under the 2010 edition of the United States Sentencing Commission Guidelines Manual, which we reference unless otherwise indicated.

[8] Prior to trial, Stoner's attorney filed an unopposed motion for a psychiatric evaluation in order to determine (1) whether Stoner was currently suffering from a mental disease or defect rendering him unable to understand the nature and consequences of the proceedings or to properly assist in his defense and (2) whether, at the time of the offense, he was suffering from a severe mental disease or defect which rendered him unable to appreciate the nature and quality of the wrongfulness of his acts. The district court ordered a psychiatric evaluation. It revealed Stoner to be competent at the time of the offense and competent to stand trial.

guidelines." (*Id.*)

At sentencing, Stoner's counsel expounded on the objection to the obstruction of justice enhancement, saying

> I truly believe that Mr. Stoner believes the facts that he testified to at trial. I honestly believe that was his reference point. I don't believe it rose to the level of being perjurious . . . . I believe . . . that he was basically denying his guilt in this case. Simply a denial of guilt does not rise to the level of perjury.

(R. Vol. 4 at 256.)

The district court overruled Stoner's objection to the obstruction of justice enhancement:

> The Court is familiar, certainly, with the matter at issue before us. The Court sat through the same trial that all of you sat through. I am aware that under the Sentencing Guidelines there is an application note, which is kind of an escape clause for someone receiving points under this section of the guidelines for obstruction. But the Court believes that the weight of both the authority and certainly the facts in this case -- I mean, he said over and over at the trial that he didn't have a gun. The jury didn't believe him, and it is not my job to go behind them in that instance. The Court finds that the enhancement for obstruction is appropriate. I'm going to leave these two points, I'm not going to take away the two points . . . .

(R. Vol. 4 at 257-58.) It denied Stoner's request for a downward variance and sentenced Stoner to 51 months imprisonment. A 51-month sentence was appropriate under the § 3553(a) factors, the court said, because it accounted for Stoner's extensive criminal history (which included violence), afforded an adequate deterrence from future criminal behavior, protected the public and allowed Stoner adequate time to receive substance abuse treatment while incarcerated.

## III.   DISCUSSION

We now address the issues Stoner raises on appeal: (1) his statements to Edwards

- 8 -

concerning his use of PCP and possession of the gun should not have been admitted and (2) since he did not obstruct justice his sentence was improperly enhanced.

A.    Trial—Admission of Involuntary Confession

The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. In *Miranda*, the Supreme Court held the Fifth Amendment privilege against self-incrimination prohibits the admission of statements given by a suspect during "custodial interrogation" without a prior warning. 384 U.S. at 444. However, that rule applies only to the admission of such statements in the government's case-in-chief; the government is allowed to use statements taken in violation of *Miranda* to impeach the credibility of a defendant. *See Harris v. New York*, 401 U.S. 222, 224 (1971); *see also Oregon v. Hass*, 420 U.S. 714, 722 (1975) ("[T]he shield provided by *Miranda* is not to be perverted to a license to testify inconsistently, or even perjuriously, free from the risk of confrontation with prior inconsistent utterances."). There is one caveat, however:  in order for statements taken in violation of *Miranda* to be used for impeachment, the statements must have been made voluntarily. *Hass*, 420 U.S. at 722; *see also Mincey v. Arizona*, 437 U.S. 385, 398 (1978). "A coerced or involuntary statement, which violates a suspect's rights under the Fifth Amendment, is not admissible at trial for any purpose." *United States v. Guerro*, 983 F.2d 1001, 1003 (10th Cir. 1993); *see also Mincey*, 437 U.S. at 398 ("*[A]ny* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law, even though there is ample evidence aside from the confession to support the conviction.") (quotations omitted).

As the government only used Stoner's statements to impeach him, the only issue is whether the statements were made voluntarily. The district court answered in the affirmative. "The issue of voluntariness is reviewed de novo, but the factual findings of the district court are reviewed under the clearly erroneous standard."[9] *Guerro*, 983 F.2d at 1003.

In support of his involuntariness argument, Stoner tells us the arrest and handcuffing of a defendant is presumptively coercive. Therefore, "it's no doubt safe to assume that handcuffing and forcing a suspect to walk to a police car after he was tased with 50,000 volts of electricity is coercive as well." (Appellant's Reply Br. at 2.) Moreover, he had "two taser prongs sticking out of him[,] . . . [h]is speech was slurred, he exhibited erratic movements, he would go from calm to agitation, and he was sweating profusely." (Appellant's Opening Br. at 19.) He also "had so much trouble standing on his own, that Officer Edwards had to hold him up to get him to the car." (*Id.* at 19-20.) According to Stoner, these circumstances rendered his statements "not the product of free

---

[9] In his opening brief and again at oral argument, Stoner claimed the standard of review is *de novo*. He relies on *Mincey* which said: "In making [a determination of whether a defendant's statements were voluntary], we are not bound by the [underlying court's] holding that the statements were voluntary. Instead, this Court is under a duty to make an independent evaluation of the record." 437 U.S. at 398. We do not view this statement as inconsistent with *Guerro* that we review the <u>overall issue</u> of voluntariness *de novo* and the district court's underlying factual findings for clear error. Indeed, the cases *Mincey* cites in support of its statement clarify this. *See Davis v. North Carolina*, 384 U.S. 737, 741-42 (1966) (declining to review factual findings but stating it had duty "to examine the entire record and make an independent determination of the *ultimate issue* of voluntariness") (emphasis added); *Haynes v. Washington*, 373 U.S. 503, 515-16 (1963) (stating reviewing court will defer to trial court or jury regarding resolution of evidentiary conflicts but will make an independent determination as to voluntariness).

will and a sound mind."[10] (*Id.* at 20.)

We are not called upon to decide whether statements to the police are well considered or even accurate, only whether they are voluntary. And the constitutional aspect of the voluntariness inquiry has an even more significant limitation. "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986);[11] *see also Guerro*, 983 F.2d at 1004 ("[The Fifth

---

[10] In his opening brief, Stoner relies in part on his use of PCP as a circumstance negating the voluntariness of his statements, stating he was "high on PCP." (Appellant's Opening Br. at 19.) However, at oral argument, his counsel said the use of PCP is not relevant to the voluntariness inquiry as Stoner has denied using PCP that day. Taking Stoner at his word, we eliminate PCP use as a voluntariness factor in this case. *See United States v. Yelloweagle*, 643 F.3d 1275, 1278 n.1 (10th Cir. 2011) (accepting government's concession at oral argument which corrected an argument made in its brief which was not supported by the record); *Korth v. Zion's Savings Bank & Trust Co.*, 148 F.2d 170, 171 (10th Cir. 1945) (accepting parties' concession at oral argument as to decisive question in case which eliminated need of court to consider other issues).

Even if we were to assume Stoner was high on PCP at the time of his statements, we would nevertheless find them voluntary given the absence of any evidence suggesting Edwards exploited Stoner's PCP use to coerce a confession. *See Colorado v. Connelly*, 479 U.S. 157, 165 (1986) (while the defendant's mental state is relevant to an individual's susceptibility to police coercion, there must be a link between the coercive activity and the resulting confession); *see also Guerro*, 983 F.2d 1001, 1004 (10th Cir. 1993) ("While the defendant's mental condition is an important consideration, to find a statement involuntary, the police must somehow overreach by exploiting a weakness or condition known to exist.").

[11] Connelly approached a police officer and confessed to killing a young girl. *Connelly* 479 U.S. at 160-61. The next day, he became visibly disoriented and alleged "voices" had told him to confess. *Id.* at 161. Subsequent testing revealed Connelly suffered from chronic schizophrenia and was in a psychotic state at the time he confessed. *Id.* Despite finding no wrongdoing by the police, the Colorado state courts concluded Connelly's mental condition rendered his statements and waiver of his rights involuntary. *Id.* at 162-63. The Supreme Court reversed, holding that while a defendant's mental condition is a factor in the voluntariness inquiry, "coercive police

Amendment due process] guarantee does not protect against conduct by private parties nor does it protect a defendant from his own compulsions or internally-applied pressures which are not the product of police action."). It bears repeating, the narrow issue presented is whether coercive police conduct overcame Stoner's free will.[12]

A statement is voluntary if it is "the product of a rational intellect and a free will." *Mincey*, 437 U.S. at 398 (quotations omitted). Voluntariness depends on the totality of the circumstances. *Id.* at 226. Relevant factors are: (1) the suspect's age, intelligence, and education; (2) the length of the detention and questioning; (3) the use or threat of physical punishment; (4) whether the *Miranda* warnings were administered; (5) the accused's physical and mental characteristics; (6) the location of the interrogation; and (7) the conduct of the police. *United States v. Perdue*, 8 F.3d 1455, 1466 (10th Cir. 1993).

While it is, admittedly, a close call, we cannot say it was error for the district court to conclude Stoner's statements were not coerced. Edwards summed up his conversation with Stoner as "two guys on the street" talking. (R. Vol. 4 at 187.) That summary seems more than a little understated, considering the facts. But his testimony was mostly concerned with facts and circumstances. And the court found him credible, a finding we cannot ignore. *See United States v. Miller*, 987 F.2d 1462, 1465 (10th Cir. 1993) ("We

---

activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Id.* at 164, 167.

[12] Of course, the police cannot exploit an obvious vulnerability. *Guerro*, 983 F.2d at 1004 ("While the defendant's mental condition is an important consideration, to find a statement involuntary, the police must somehow overreach by exploiting a weakness or condition known to exist.").

must rely on the district court's findings regarding witness credibility unless they are clearly erroneous."). He candidly admitted damaging facts – Stoner was handcuffed in a police car and was not advised per the *Miranda* decision, two potent considerations. Moreover, Stoner had just been tased and was disoriented. But our precedent, as well as that of the Supreme Court, establishes that while arresting and handcuffing are coercive acts, the statements of a handcuffed detainee can nevertheless be voluntary, even when *Miranda* warnings are not given. *See United States v. Silva-Arzeta*, 602 F.3d 1208, 1215 (10th Cir. 2010); *see also United States v. Watson*, 423 U.S. 411, 424 (1976) ("[T]he fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search."); *United States v. Dozal*, 173 F.3d 787, 796 (10th Cir. 1999) (finding defendant's consent to search voluntary where there was no evidence of physical mistreatment, threats or trickery even though consent given while defendant was in custody in an interrogation room and without the *Miranda* warnings).

There is no evidence Edwards threatened or otherwise coerced Stoner into confessing. Edwards asked only two questions – one legitimately relating to Stoner's well-being and the other as to the gun. The statement concerning PCP use occurred shortly after Edwards arrived on scene and handcuffed Stoner; the statement concerning the gun approximately five or six minutes later. Thus, the length of detention and the questioning itself were brief. Edwards spoke to Stoner in a calm and conversational manner. While Stoner was clearly detained at the time of questioning, he was not formally arrested until a records check later revealed a felony conviction. The detention was reasonable given the presence of the gun and evidence of an attempt to use it (the

gun was jammed). Given those circumstances, Edwards was justified in detaining and restraining Stoner to secure the scene and render it safe.[13] Significantly, Edwards did not tase Stoner. Rather, he was tased by two private security guards. Such private action does not violate the due process clause. *See Connelly*, 479 U.S. at 166 ("The most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause.") (collecting cases). In any event, despite the tasing, Edwards considered Stoner sufficiently competent to answer a couple of pressing and relevant questions.[14] Stoner did not complain of pain from being tased or handcuffed. While other police officers were in the vicinity, they were not part of the questioning.

The circumstances thus show a brief, necessary conversation about a recent volatile situation in the quiet of a patrol car between one officer and Stoner and the complete absence of any physical or psychological coercion by the officer. Our review is *de novo* but we review factual findings for clear error. Edwards' credibility is a key factual finding and for reasons stated is not clearly erroneous. His description of circumstances (but not necessarily his conclusions) is compelling in our analysis. The district court did not err.

---

[13] Before arriving at the scene, Edwards was informed by dispatch that two security guards were detaining a suspect who was possibly armed.

[14] Edwards testified that he had been tased as part of his training. He stated the tasing did not incapacitate him or otherwise render him unable to competently carrying on an intelligent conversation. Security Officer Brown had also been tased as part of his training. He testified he had the "typical[]" reaction to being tased – his muscles stiffened –- and he fell to the ground. (R. Vol. 4 at 84.)

B.    Sentencing—Obstruction of Justice Enhancement

Stoner complains that the court failed to specify which portion of his testimony was false and whether that testimony was material and willful, both necessary elements of perjury.  But he did not register his concerns with the court at a time when deficient fact finding or explanation could be corrected.  He also claims the evidence was insufficient to support a finding of perjury, as he testified to an inability to recall making any statements to Edwards and this lack of recall was consistent with the fact he had just been tased.

USSG §3C1.1 reads:

If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

The commentary provides:

This provision is not intended to punish a defendant for the exercise of a constitutional right.  A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision.  In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.

USSG §3C1.1, comment. n.2.  The guideline applies to "committing, suborning, or attempting to suborn perjury."  USSG §3C1.1, comment. n.4(b).  Here, while the district court did not explicitly so state, it obviously concluded that Stoner committed perjury at trial, its justification for imposing the obstruction of justice enhancement.

- 15 -

"[A] defendant's right to testify does not include a right to commit perjury." *United States v. Dunnigan*, 507 U.S. 87, 96 (1993). However, "[t]he mere fact that a defendant testifies to his or her innocence and is later found guilty by the jury does not automatically warrant a finding of perjury." *United States v. Markum*, 4 F.3d 891, 897 (10th Cir. 1993). Perjury occurs when "[a] witness testifying under oath or affirmation . . . gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Dunnigan*, 507 U.S. at 94; *see also United States v. Smith*, 81 F.3d 915, 918 (10th Cir. 1996) ("The factual predicates of perjury are that a witness (1) gives false testimony under oath (2) concerning a material matter (3) with willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.").

"[I]f a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition." *Dunnigan*, 507 U.S. at 95. "When doing so, it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding." *Id.* However, the district court's determination that an enhancement is required will be sufficient if "the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." *Id.*

In addition to the *Dunnigan* requirements, we also require the court "be explicit about which representations by the defendant constituted perjury." *United States v.*

*Flonnory*, 630 F.3d 1280, 1287 (10th Cir. 2011). "The court need not recite the false statements verbatim, but must generally identify the testimony at issue so that when we review the transcript we can evaluate the *Dunnigan* findings of the elements of perjury against an identified line of questions and answers without having simply to speculate on what the district court might have believed was the perjurious testimony." *Id.* (quotations omitted).

Here, the court's comments—Stoner "said over and over at that trial that he didn't have gun"—adequately identify that statement as the testimony the court found to amount to perjury; there is no need to speculate. In his testimony Stoner did claim not to be able to recall his statements to Edwards, but he also explicitly denied possession of a gun. Contrary to Stoner's claim, it was not his inability to recall that was perjurious; it was his explicit denial.

Similarly, while the court did not expressly find the statement denying knowledge of the gun to be material, it implicitly did so in noting that Stoner had said "over and over at the trial that he didn't have a gun" and "the jury didn't believe him." (R. Vol. 4 at 258.) In other words, the court implicitly found the jury would not have convicted him of being a felon in possession of a firearm and ammunition had it believed his testimony. It implicitly found the statement to be material.[15]

---

[15] The elements of felon in possession of a firearm and ammunition are: (1) the defendant was convicted of a felony; (2) he thereafter knowingly possessed a firearm and ammunition; and (3) the possession was in or affecting interstate commerce. *United States v. Capps*, 77 F.3d 350, 352 (10th Cir. 1996). The parties stipulated that Stoner had a prior felony conviction and the government's evidence that the firearm and ammunition

It is troubling that the district court failed to expressly make findings clearly establishing that Stoner's statement was false[16] and made "with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." But that does not require reversal if the error was harmless.

As the record overwhelmingly demonstrates, Stoner lied about his possession of the gun. Indeed, his testimony seems contrived, even when most charitably regarded. At trial he unequivocally testified that he did not have a gun  His testimony contradicted that of Dodd and Brown.  They testified to observing Stoner waving the gun and pounding it on the ground and to finding the gun between the front passenger door and the front passenger seat where Stoner was sitting.  It also contradicted Edwards' testimony (which the district court found to be credible) that when he asked Stoner if the gun was his, he twice said it had jammed on him.  This evidence, and the absence of any evidence that Stoner was confused, mistaken or suffering from a faulty memory at the time of trial, supports a reasonable inference that his testimony was willfully false.  *See United States*

had traveled in interstate commerce was not contested at trial.  Therefore, the crucial issue at trial was whether Stoner knowingly possessed the firearm and ammunition. Thus, his denial of knowledge of the gun was material.  *See* USSG §3C1.1, comment. (n.6) ("'Material' evidence . . . means evidence . . . that, if believed, would tend to influence or affect the issue under determination.").

[16] The district court did say the jury did not believe Stoner.  But it also said it was not its "job to go behind [the jury] in that instance."  (R. Vol. 4 at 258.)  Therefore, the court itself never expressly concluded Stoner's statement was false.  *See Markum*, 4 F.3d at 897 ("An automatic finding of untruthfulness, based on the verdict alone, would impinge upon the constitutional right to testify on one's own behalf.  To impose the two-level enhancement under §3C1.1, the district court must specifically find that the defendant committed perjury.").  It may not be necessary to accentuate the obvious, but doing so clearly informs the record.

*v. Rivera-Carrera*, 386 F. App'x. 812, 820-21 (10th Cir. 2010) (unpublished) (affirming district court's application of obstruction of justice enhancement even though court failed to make particularized findings that defendant's false statements were willful where trial record demonstrated defendant's trial testimony was sufficiently at odds with all the other witnesses' testimony); *see also United States v. Webster*, 373 F. App'x. 867, 871 (10th Cir. 2010) (unpublished) (affirming district court's application of obstruction of justice enhancement even though court failed to make particularized findings that defendant's false statements were willful where there was no evidence defendant's testimony was the product of confusion, mistake or faulty memory and court determined defendant was making excuses for his conduct).[17]  Given the overwhelming evidence that Stoner lied about possessing the firearm, a remand requiring the district court to accentuate the obvious would change nothing.  "[I]t would be surprising if [Stoner's] sentence would be any different if we reversed and remanded for resentencing."  *See Flonnory*, 630 F.3d at 1288.  As the defect in the district court's factfinding did not affect Stoner's substantial rights, the error was harmless.

AFFIRMED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

---

[17] Unpublished opinions are not binding precedent. 10th Cir. R. App. P. 32.1(A). We mention *Rivera-Carrera* and *Webster* because of their persuasive reasoning.